FAIR, J.,
for the Court:
¶ 1. George and Teena Blakely were granted an irreconcilable differences divorce in the Grenada County Chancery Court, ending a twenty-one-year marriage. They have two children, ten-year-old Kurt and nineteen-year-old Kayla. George received custody of Kayla by agreement, while the chancery court awarded custody of Kurt to Teena after a trial. George now appeals, arguing that the chancellor erred in applying the Albright factors. George also contends the court erroneously failed to award him child support and college expenses for Kayla. We find the chancellor’s decisions supported by substantial evidence, so we affirm.
FACTS
¶ 2. On October 15, 2008, Teena filed for divorce, alleging habitual cruel and inhuman treatment. She and George continued to reside in the marital home until *801 January 28, 2009, when Teena left. Kayla and Kurt remained with George until February 22, 2010, when a temporary order for visitation and support was entered, giving George custody of the children and requiring Teena to pay support. The couple later agreed to an irreconcilable differences divorce and submitted the issues of Kurt’s custody and support to the court. Custody of Kayla was awarded to George by agreement because Kayla had a strained relationship with her mother. After a one-day trial, held on September 15, 2010, the chancery court awarded custody of Kurt to Teena. The chancellor denied any child support or college expenses for Kayla. George challenges these rulings on appeal.
STANDARD OF REVIEW
¶ 3. Questions of law are reviewed de novo. Irving v. Irving, 67 So.3d 776, 778 (¶ 11) (Miss.2011). A chancellor’s factual findings, on the other hand, will not be disturbed unless she was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Carambat v. Carambat, 72 So.3d 505, 510-11 (¶ 24) (Miss.2011). As long as substantial evidence supports the chancellor’s findings, an appellate court is without authority to disturb them, even if it would have found otherwise as an original matter. Joel v. Joel, 43 So.3d 424, 429 (¶ 14) (Miss.2010). Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that she resolved all such fact issues in favor of the appellee. Ferrara v. Walters, 919 So.2d 876, 881 (¶ 8) (Miss.2005) (citing Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990)).
DISCUSSION
1. Child Support and College Expenses for Kayla
¶ 4. In his first issue, George contends the chancellor should have awarded him child support and college expenses for Kayla. He argues the chancellor had no legal basis to deny these awards.
¶ 5. At the outset, we note that support for Kayla was not clearly addressed by the property settlement agreement, nor was it expressly submitted to the chancery court for determination. The Blakelys received an irreconcilable differences divorce under Mississippi Code Annotated section 93-5-2 (Supp.2011). The only agreed issues were that George would get custody of Kayla and that each party would be responsible for half of the children’s medical expenses. While education expenses and child support were submitted as issues for the chancery court to decide, it is unclear whether they are for both children or only Kurt. The document’s organization and use of singular pronouns suggest that the latter is more probable.
¶ 6. The issues of Kayla’s support and college expenses do not appear to have been expressly tried or even given much thought prior to this appeal, as the circumstances suggest any award would have been small. Kayla was nearly nineteen years of age at the time of trial. She was attending college and lived on campus, though she would stay with George on weekends. Kayla had a scholarship that paid for her tuition, housing, and food expenses. Books were the only out of pocket expense testified to at trial, costing about $300 per semester. Kayla was also employed part'time, and testimony indicated that she had paid for some of the cost her books, though she received an allowance from George. George also provided her with a vehicle and paid for some miscellaneous expenses.
¶ 7. Nonetheless, the chancellor addressed support and education expenses for Kayla in her judgment, and neither of *802 the parties has argued the issue of waiver or attacked the adequacy and sufficiency of the consent agreement; so we will not address these potential concerns. We take it as a fact that the issues of Kayla’s support and college expenses were submitted to the chancery court for determination.
¶ 8. The chancellor held that Kayla’s course of conduct toward her mother warranted a denial of child support and college expenses. The chancellor found that Kayla had expressed a “total lack of respect” and an “unwillingness to have a relationship” with her mother. In denying support, the chancellor apparently relied on Hambrick v. Prestwood, 382 So.2d 474 (Miss.1980).
¶ 9. Hambrick addressed the duty of a parent to support a college-age child. Hambrick’s nineteen-year-old daughter had finished high school, was attending college, and was employed and earning an income. She expressed a dislike of her father that was “close to hate” and had refused to have contact with him, averring that she had no intention to do so in the future. The supreme court held:
The duty of a father to send a child to college, under the circumstances of this case, is not absolute. It is dependent, not only on the child’s aptitude and qualifications for college, but on whether the child’s behavior toward, and relationship with the father, makes the child worthy of the additional effort and financial burden that will be placed on him. Sending children to college is expensive and can cause much sacrifice on the part of parents. It cannot ordinarily be demanded, but must be earned by children through respect for them parents, love, affection and appreciation of parental efforts, none of which are present in this instance.
Id. at 477. The supreme court reversed the chancellor’s award of child support to the custodial parent. Id. at 477-78.
¶ 10. This case presents many similarities to Hambrick. Although Kayla did not testify, it was uncontested that she and her mother had a strained relationship even before the separation. After the separation, Kayla refused to visit her mother and generally refused to communicate with her. Teena testified that when they did speak, her daughter would repeatedly call her a “whore.” Kayla rebuffed any attempts at reconciliation, refusing to return phone calls or text messages, and she had refused Teena’s gift for her high school graduation. Kayla had also threatened to lie in court to prevent Teena from getting custody or visitation, and she had assisted her father in alienating Kurt from his mother. This behavior caused Kurt great stress and difficulty with visitation.
¶ 11. George argues that the chancellor erroneously blamed Kayla when both mother and child were responsible for the strained relationship. He contends that Kayla’s anger at her mother’s adultery is understandable and that Teena had further strained the relationship by expressing concern over her daughter’s friendship with an older man. George notes also that the estrangement is not as severe as it was in Hambrick, where the daughter had not spoken with her father for six or seven years. While we recognize some validity in these arguments, sitting as an appellate court reviewing a cold record, we are not in a position to second-guess the chancellor’s interpretation of something as complex and personal as the relationship between a mother and her teenage daughter.
¶ 12. George also contends that the chancellor should have followed the holding in Caldwell v. Caldwell, 579 So.2d 543, 548 (Miss.1991), where the supreme court reversed the denial of child support to a *803 fifteen-year-old child. The court held that a child of that age could only surrender her right to support through conduct that was “clear and extreme.” Id. However, we note that the Caldwell decision was based on the child’s age-the supreme court distinguished it from Hambrick on that basis. Id. As Kayla was college-aged, the chancellor did not err in applying Hambrick.
¶ 13. After reviewing the record in this case, we conclude the chancellor acted within her discretion in denying child support and educational expenses for Kayla.
2. Custody of Kurt; Albright factors
¶ 14. In his remaining issue, George contends the chancellor should have awarded custody of Kurt to him. He argues the chancellor’s decision resulted from an erroneous analysis of the Albright factors.
¶ 15. In Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), the Mississippi Supreme Court held that the best interest of the child must control in all custody decisions, and this principle has been adopted as public policy by the legislature in Mississippi Code Annotated section 93-5-24 (Rev.2004). In determining the best interest of the child in custody disputes, it is the duty of the court to consider that the relationship of parent and child is for the benefit of the child, not the parent. See Reno v. Reno, 253 Miss. 465, 475, 176 So.2d 58, 62 (1965) (quoting J.W. Bunkley, Jr. & W.E. Morse, Bunkley and Morse’s Amis on Divorce and Separation in Mississippi § 8.01 (2d ed.1957)).
¶ 16. To determine where the child’s best interest lies, chancellors must consider the following factors when evaluating the fitness of each parent: (1) age, health, and sex of the children; (2) continuity of care; (3) parenting skills and the willingness and capacity to provide primary child care; (4) employment responsibilities of the parents; (5) physical and mental health and age of the parents; (6) moral fitness of the parents; (7) emotional ties of the parents and children; (8) home, school, and community records of the children; (9) preference of children twelve years of age or older; (10) stability of the home environment and employment of each parent; and (11) other relevant factors in the parent-child relationship. Al-bright, 437 So.2d at 1005.
¶ 17. The chancellor is required to address each of the Albright factors that is applicable to the case before her. Powell v. Ayars, 792 So.2d 240, 244 (¶ 10) (Miss.2001). However, the chancellor need not decide that every factor favors one parent over the other. See Weeks v. Weeks, 989 So.2d 408, 411 (¶ 12) (Miss.Ct. App.2008). Nor are the Albright factors a mathematical formula where custody must be awarded to the parent who “wins” the most factors. Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001). Instead, the Al-bright factors exist to ensure the chancellor considers all the relevant facts before she reaches a decision. “All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way [she] sees fit” in determining where the child’s best interest lies. Johnson v. Gray, 859 So.2d 1006, 1013-14 (¶ 36) (Miss.2003).
¶ 18. In this case, the chancellor found that most of the Albright factors did not strongly favor either parent. Teena possessed superior parenting skills and capacity, had employment that was more conducive to custody, and had provided most of the care for the child prior to separation. George had stronger emotional ties to Kurt, but the chancellor was concerned that George had used them to alienate Kurt from his mother.
*804 ¶ 19. On appeal, George contends the chancellor’s findings in favor of Teena are erroneous. He also alleges that the chancellor failed to consider Teena’s adultery-under the moral fitness factor.

A. Undisputed Factors

¶ 20. Most of the Albright factors are not in dispute. Both parents are about the same age and are generally healthy. Both eventually had to leave the marital home after it was foreclosed on during the pen-dency of the divorce, but each showed an intent to remain in the area and keep Kurt in the same school. Teena and George had stable work histories. The chancellor concluded that both were “good parents” who “are capable of providing a good, moral, [and] stable home environment for the child.” Kurt had not reached twelve years of age at the time of trial, and thus was not old enough to express a preference under Mississippi law. See Miss.Code Ann. § 93—11—65(l)(a) (Supp.2011).

B. Parenting Skills, Willingness and Capacity

¶ 21. The chancellor recognized that both parents were willing and able to care for the children. However, she was concerned George had used his close relationship with Kurt to alienate him from his mother after the separation. George and Kurt were very close—Kurt would cry when he was separated from his father. During the marriage, this had caused George to quit a job when the hours impacted his time with the boy. George even allowed Kurt to sleep in his bed, a practice that continued after the separation.
¶ 22. There was testimony that after the separation, George frequently denied Teena visitation with Kurt, saying that Kurt did not want to go. Once a temporary order was entered for regular visitation, George permitted only the minimum required under the letter of the order. George was openly hostile toward Teena during the visitation exchanges, and he allowed Kayla to behave similarly in front of Kurt. When Kurt was reluctant to go with his mother, rather than comforting him, George would cry himself and tell Kurt the visitation would be over soon. George also bought Kurt a cell phone so he could call George during his visitation with Teena. The chancellor found that these actions were unjustified and had caused Kurt great stress.
¶ 23. George takes issue with the chancellor’s interpretation of these events, but he asks this Court to go beyond the scope of our review. “Where there is conflicting testimony, the chancellor, as the trier of fact, is the judge of the credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation.” Bowen v. Bowen, 982 So.2d 385, 395 (¶42) (Miss.2008) (quotations omitted).
¶ 24. The chancellor found that George’s alienating behavior reflected poorly on his parenting skills. The record supports this finding.

C.Moral Fitness

¶ 25. George attributed the breakup of the marriage to Teena’s extramarital affairs. He claimed to know of at least three affairs over the course of the marriage, apparently not counting a fourth that began after the separation. George contends the chancellor erred in finding this factor did not favor either parent. He recognizes that the issue is not whether Teena engaged in extramarital affairs, but how they relate to her parenting.
¶ 26. “Marital fault should not be used as a sanction in custody awards.” Albright, 437 So.2d at 1005. Adultery *805 should be considered in evaluating moral fitness, but it should not be given undue weight. See Brekeen v. Brekeen, 880 So.2d 280, 286 (¶ 19) (Miss.2004). “Adultery of a parent may be an unwholesome influence and an impairment to the child’s best interest, but on the other hand, may have no effect.” Carr v. Carr, 480 So.2d 1120, 1123 (Miss.1985).
¶ 27. Reviewing the record, we find no error in the chancellor’s decision. There was no evidence Teena had exposed Kurt to any of her affairs, but George admitted he had allowed Kurt to be around his girlfriend after the separation. And while George correctly points out that Kayla knew of her mother’s affairs, there is no evidence Kurt did. Moreover, the chancellor found that George had used his wife’s decision to end the marriage to alienate the children from her, causing harm to the children that could have been avoided if he had acted with their best interest in mind.
¶ 28. We find no error in the chancellor’s findings on this issue.

D.Employment Responsibilities

¶ 29. The chancellor found that Teena’s employment was more conducive to child rearing. The record supports this finding: George had to be at work at 7:00 a.m. and would have to drop Kurt off with an aunt before school. Teena, on the other hand, started work at 8:80 a.m. Though she planned to live farther from Kurt’s school, in her custody Kurt could sleep later and spend the time before school with a parent rather than a relative. Tee-na would also get off work at 4:30 p.m., thirty minutes earlier than George, and she left work early on Fridays. The chancellor’s findings on this issue are supported by the record.

E. Continuity of Care

¶ 30. The chancellor found that this factor favored Teena based on her care of Kurt prior to the separation. George contests the evidence that Teena was the primary caregiver prior to separation, but, again, he asks this Court to reweigh evidence on appeal, which we cannot do. The real thrust of George’s argument on this issue is that the chancellor should have considered the approximately two years between the separation and the trial where George had custody of Kurt, including about a year between the separation and the temporary order. During that first year, Teena exercised very little visitation with Kurt.
¶ 31. George is correct that continuity of care after separation can be considered by the chancellor. See, e.g., Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997). However, in this case, the chancellor did consider what occurred after the separation. She concluded that George, not Tee-na, was responsible for Kurt’s recent alienation from his mother. This finding is supported by substantial evidence.

F. Conclusion

¶ 32. The chancellor was convinced that George could not put Kurt’s best interest above his anger at Teena. She concluded that placing Kurt in Teena’s custody would facilitate a healthier relationship with both parents. After reviewing the record, we find the chancellor’s decision supported by substantial evidence. George’s contention that the chancellor erred in her Albright analysis is without merit.
¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*806 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.