MAXWELL, J.,
for the Court:
¶ 1. Determining child custody is one of the most difficult of the many decisions our chancellors face. There is no mathematical formula — instead the chancellor must consider the best interest of the child, assessing the factors from Albright.[1] And when a chancellor properly applies and considers these factors, this court cannot say the chancellor manifestly erred and reverse her decision. Nor can a chancellor change her decision and reweigh the Albright factors upon the non-custodial parent’s request without that parent first showing a material change in circumstances adversely affecting the child.
¶ 2. Here, the chancellor properly considered and applied the Albright factors to determine whether sole physical custody of Jonathan O’Briant’s son Maguire should be awarded to Jonathan’s ex-wife Olivia. We find no merit to Jonathan’s arguments that the chancellor (1) miscalculated a factor he should have “won” and (2) gave undue weight to his history of mental illness and not enough weight to his parenting skills. Thus, we affirm the child-custody award.
¶ 3. We also find the chancellor properly denied Jonathan’s Rule 59 motion for rehearing and to alter and amend the judgment.[2] Though Jonathan claims he has “newly discovered evidence” entitling him to a new child-custody hearing, his evidence concerns events that occurred after *804 the child-custody hearing. Essentially, he is asking for a new Albright analysis. Absent a claim of a material change in circumstances, we find no abuse of discretion in the chancellor’s refusal to revisit her child-custody decision and reassess the Al-bright factors. Thus, we also affirm the denial of Jonathan’s Rule 59 motion.
Background

A. Separation

¶4. In August 2009, Olivia separated from Jonathan, taking their then two-year-old son Maguire with her to her parents’ home in Texas. According to Olivia, the five-year marriage had been “horrible.” The couple married after a whirlwind three-month courtship-not enough time, Olivia testified, for her to learn of Jonathan’s past history of serious mental illness.
¶ 5. Added to the stress of their marriage was the fact that Maguire had been born twelve weeks prematurely. Maguire stayed in the hospital for the first eleven weeks of his life and continues to have significant health problems — over which Olivia and Jonathan have sharply disagreed how best to treat.
¶ 6. After Olivia left with Maguire, Jonathan filed for divorce in Madison County, Mississippi, where the couple had lived and raised Maguire.[3] Jonathan was awarded temporary custody of Maguire pending the divorce trial.

B. Judgment of Divorce

¶ 7. In August 2010, Olivia and Jonathan agreed to divorce and submitted the issues of Maguire’s custody, visitation, and support to the chancellor. Among other witnesses, the chancellor heard testimony from Olivia, Jonathan, and Jonathan’s mother, Ann Necaise. Jonathan and Olivia had lived in Ann’s house, while Ann lived next door with her mother. During the separation, Jonathan and Maguire continued to live in Ann’s house, and, according to the chancellor, Jonathan frequently relied on Ann’s assistance with Maguire.
¶ 8. In her final judgment of divorce, the chancellor analyzed each Albright factor, ultimately concluding it was in Maguire’s best interest that Olivia be awarded sole physical custody.

C.Motion for Rehearing

¶ 9. Ten days after the final judgment of divorce, Jonathan filed a motion for rehearing and to alter or amend the judgment under Rule 59 of the Mississippi Rules of Civil Procedure. See Curtis v. Curtis, 59 So.3d 623, 628 (¶ 18) (Miss.Ct. App.2011) (citation omitted) (holding the timing of post-judgment motion controls whether the motion is considered a Rule 59 or Rule 60[4] motion — motions served within ten days fall under Rule 59). He then filed a supplemental motion for rehearing, followed by a second supplemental motion for rehearing.
¶ 10. In all three motions, Jonathan asserted “newly discovered evidence not available at trial” entitled him to a rehearing or an amended award of custody. This evidence concerned events occurring after the custody award, including a phone log allegedly showing Jonathan had not been allowed to exercise his telephonic visitation rights since Olivia had been awarded custody. Jonathan also claimed Olivia contin *805 ued not to attend to Maguire’s health needs since being awarded custody, and that Olivia has placed Maguire in day-care, despite assuring the chancellor she would not.
¶ 11. The chancellor dismissed all three motions simultaneously, and Jonathan timely appealed. See M.R.A.P. 4(a), (d) (thirty-day time period to file notice of appeal runs from entry of denial of Rule 59 motion). His appeal challenges the denial of his rehearing motion as well as the underlying custody award. See Curtis, 59 So.3d at 629 (¶ 19) (citing Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss. 2001)) (holding appeal from denial of Rule 59 motion may address not only denial of Rule 59 motion but also merits of underlying proceeding).
Discussion
I. Child-custody Award

A. Our Limited Standard of Review

¶ 12. In appeals from child-custody decisions, our polestar consideration, like the chancellor’s, must be the best interest of the child. Montgomery v. Montgomery, 20 So.3d 39, 42 (¶ 9) (Miss.Ct.App.2009) (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (¶ 8) (Miss.2002)). But precedent dictates we not substitute our judgment for that of the chancellor. Id. We are instead bound to apply a “very narrow” standard of review. Id.
¶ 13. We may only reverse a child-custody determination if the chancellor is manifestly wrong, clearly erred, or applied an erroneous legal standard. Id. When a chancellor properly applies and considers the child-custody factors from Albright, there is no manifest error. Smith v. Smith, 614 So.2d 394, 397 (Miss.1993).

B. The Chancellor’s Albright Analysis

¶ 14. Jonathan argues the chancellor misapplied Albright because she miscalculated one of the factors and failed to weigh the evidence properly. Because the chancellor is to use Albright as a guide, not a formula, and weigh the evidence as she sees fit, we find no reversible error.
1. Albright Is a Guide, Not a Formula
¶ 15. “Determining custody of a child is not an exact science.” Lee v. Lee, 798 So.2d 1284, 1288 (¶15) (Miss.2001). Instead, it “is one of the most difficult decisions that courts must make.” Brewer v. Brewer, 919 So.2d 135, 141 (¶ 21) (Miss.Ct.App.2005). In Albright, the Mississippi Supreme Court gave a list of factors to consider to help chancellors “navigat[e] what is usually a labyrinth of interests and emotions.” Lee, 798 So.2d at 1288 (¶ 15) (citing Albright, 437 So.2d at 1005). The Albright factors provide chancellors guidance, not a mathematical formula. Id. “[E]ven when the trial judge sensitively assesses the factors noted in Albright and [its] progeny, the best the judiciary can offer is a good guess.” Love v. Love, 74 So.3d 928, 932 (¶ 17) (Miss.Ct.App.2011) (quoting Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991)).
¶ 16. Jonathan argues the chancellor committed legal error because she “recast” one Albright factor into two — causing the factor to favor Olivia. Jonathan analogizes this perceived error to an umpire botching the number of outs in an inning. But unlike baseball, an Albright analysis is not premised solely on a scoring system to determine which parent “wins.” Blakely v. Blakely, 88 So.3d 798, 803 (¶ 17) (Miss.Ct.App.2012) (citing Lee, 798 So.2d at 1288 (¶ 15)). “Instead, the Albright factors exist to ensure the chancellor considers all the relevant facts before she reaches a decision.” Id. And our review for manifest *806 error is not a mechanical check on the chancellor’s score card to see if she “tallied” each parent’s score correctly. See id. Instead, we ask whether the chancellor considered all relevant facts, giving deference to the weight she assigns each factor.
¶ 17. Here, the chancellor considered all the relevant facts by applying each Albright factor:
(1) age, health, and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of the parents;
(8) the home, school and community record of the child;
(9) the preference of the child at the age sufficient to express a preference by law;[5]
(10)stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.
Lee, 798 So.2d at 1288 (¶ 15) (citing Albright, 437 So.2d at 1005). While Jonathan takes issue with the chancellor addressing the stability of each parent’s employment when considering their employment responsibilities, then later in her order, assessing the stability of their respective home environments, he cannot argue the chancellor failed to consider these relevant factors. Thus, we find no “misapplication” of Albright occurred.

2. Weight of the Evidence Is Within the Chancellor’s Discretion

¶ 18. Jonathan also contests the chancellor’s findings as to which parent demonstrated the continuity of care prior to the separation, which has the best parenting skills, and which has the willingness and capacity to provide primary child care, as well as her findings on the physical and mental health and age of the parents. He specifically claims the chancellor ignored evidence of his good parenting skills and Olivia’s bad parenting skills, “penaliz[ing]” rather than crediting him for having his mother next door to help with Maguire. He also suggests the chancellor put too much weight on the three months he was committed to the Mississippi State Hospital at Whitfield in 2000. These challenges are premised on the chancellor’s evidentia-ry and credibility assessments.
¶ 19. In our narrow review we give deference to the chancellor’s factual findings, asking if they were supported by substantial evidence. See, e.g., Wilson v. Wilson, 53 So.3d 865, 867-68 (¶¶7, 10) (Miss.Ct.App.2011). “The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts.” Johnson v. Gray, 859 So.2d 1006, 1014 (¶ 36) (Miss.2003) (quoting Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994)). “ ‘[T]he chancellor has the ultimate discretion to weigh the evidence the way she sees fit’ in determining where the child’s best interest lies.” Blakely, 88 So.3d at *807 808 (¶ 17) (quoting Johnson, 859 So.2d at 1018-14 (¶ 36)).
¶ 20. We find substantial evidence to support the chancellor’s finding that Olivia had been primarily responsible for Ma-guire’s care prior to separation and “had significantly more time to develop her parenting skills” than Jonathan. Olivia was a “stay-at-home mom” prior to separation, while Jonathan either worked or studied outside the home. And when Jonathan was awarded temporary custody, he relied on his mother to take care of Maguire rather than developing his own parenting skills. Contrary to Jonathan’s assertion, the chancellor was not “penalizing” Jonathan for having his mother nearby. In fact, she noted Olivia also lived with her parents and found the presence of extended family contributed to the stability of each parent’s home environment.
¶ 21. There was also substantial evidence to support the chancellor’s findings regarding Jonathan’s mental health. Thus, we find the chancellor did not put too much weight on Jonathan’s 2000 commitment to Whitfield. The chancellor noted that Jonathan had achieved “significant stabilization” in his symptoms of depression, borderline personality disorder, and bipolar disorder since 2000. But she also found his “mental health issues are not curable but rather will require diligent, consistent and long term management through prescription drugs as well as regular sessions with ... a psychiatric care provider.” Because the chancellor relied on Jonathan’s psychiatric records as well as his own testimony about his continued treatment to make her findings, we find no abuse of discretion in finding the physical- and-mental-health-of-the-parents factor “slightly” favored Olivia.
¶ 22. We affirm the child-custody award.
II. Denial of Rehearing
¶ 23. Jonathan argues the chancellor abused her discretion when she denied his Rule 59 motion. He claims “newly discovered evidence” entitled him to a new child-custody hearing. But Jonathan is not actually seeking a new trial based on evidence that would have been introduced at the August 2010 divorce hearing had he only known about it. Instead, he is seeking a reweighing of Albright based on events that have occurred since trial.
¶24. “Newly discovered evidence must be of facts existing at the time of trial.” Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 11 Federal Practice and Procedure § 2808 (2d ed.1995); see Anthony v. Earnest, 443 So.2d 1256, 1258 (Ala.Civ.App.1983) (holding that “since the newly discovered evidence occurred subsequent to the trial, a new trial under Rule 59 [of the Alabama Rules of Civil Procedure] [was] not warranted”). And here, none of the facts Jonathan sought to introduce through his Rule 59 motion existed at the time of the August 2010 divorce hearing. Instead, the evidence involves Olivia’s actions since being awarded custody, which Jonathan argues, if factored into a new Albright analysis, would lead to him being awarded custody.
¶ 25. The Mississippi Supreme Court has acknowledged “[t]he Albright factors may ebb and flow yearly, quarterly, monthly or even less, but in the absence of a substantial adverse effect upon the child, physical custody changes are not only unwarranted, they are unwise.” Giannaris v. Giannaris, 960 So.2d 462, 468 (¶ 10) (Miss.2007). That is because “[t]he best interest of the child requires that the child have some degree of stability in his or her life” and not be “bounced back and forth between ... parents like a volleyball.” Id. at 467 (¶ 9) (citations omitted). Therefore, *808-830 a non-custodial parent cannot simply request a chancellor reweigh “the Albright factors to see who now is better suited to have custody of the child.” Id. at 468 (¶ 10) (quoting Sanford v. Arinder, 800 So.2d 1267, 1272 (¶ 16) (Miss.Ct.App.2001)). Instead, he must first show that a material change in circumstances with an adverse effect on the child has occurred. Id.
¶ 26. In denying Jonathan’s Rule 59 motion, the chancellor essentially denied a request for modification made immediately after custody had been awarded. Because Jonathan merely claimed an Albright analysis performed just months after the custody award would yield a different result— and not that a material change in circumstances adversely affecting Maguire had occurred — we find no abuse in discretion in the chancellor denying this motion.
¶ 27. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P JJ., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. See M.R.C.P. 59(a), (e).

. Before Jonathan had filed for divorce, Olivia had filed for a temporary restraining order and divorce in Texas. But because Mississippi was Maguire's home state, jurisdiction to make an initial child-custody determination lay in Mississippi. See Miss. Code Ann. § 97-23-201(1) (Rev.2004). Olivia dropped the Texas proceeding and agreed to go forward with the divorce in Mississippi.

. M.R.C.P. 60(b).

. “Under Mississippi law, a child under the age of twelve is too young to have [his] preference considered.” Mixon v. Sharp, 853 So.2d 834, 840 (¶ 29) (Miss.Ct.App.2003) (citations omitted). Here, the chancellor properly found this factor did not apply because Ma-guire was only three at the time of the Al-bright analysis.