# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00496-COA

SARAH MCKENZIE RAYNER                                                    APPELLANT

v.

CHANCE D. SIMS                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 01/08/2016 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | S. CHRISTOPHER FARRIS |
| ATTORNEY FOR APPELLEE: | NANCY E. STEEN |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED: 10/17/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Sarah McKenzie Rayner ("Mackie") appeals the chancellor's award of joint physical custody, his consideration of the *Albright* factors, and his computation of child support. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Mackie and Chance Sims are the natural parents of Frances, a female child born in November 2013.[1] Mackie and Chance dated, but never married. They briefly lived together following the birth of Frances.[2]

---

[1] For privacy purposes, we have changed the minor child's name.

[2] Mackie and Chance lived together from March 2014 to June 26, 2014.

¶3. Chance filed a "complaint for adjudication of paternity and for custody and other matters," wherein he requested custody of Frances or, alternatively, that the parties have joint custody. Mackie filed an answer and requested physical custody of Frances. Mackie further requested that Chance have "restricted" visitation rights, limited to "the daytime only and supervised by a suitable person."

¶4. On May 8, 2015, the chancellor entered a temporary order, which provided Chance with scheduled visitation, including overnight visitation, with Frances. The parties subsequently engaged in discovery.

¶5. Following a trial on November 17, 2015, the chancellor awarded the parties joint legal and "shared" physical custody of Frances. Specifically, the chancellor ordered that Chance would have physical custody of Frances three days/nights per week, and Mackie would have physical custody of Frances four days/nights per week. Additionally, the chancellor ordered the parties to pay child support "based upon 14 percent of each party's adjusted-gross income" and "in proportion to their periods of shared custody and their incomes."

¶6. Mackie filed a motion to reconsider, which the chancellor denied. Mackie now appeals and argues: (1) the chancellor erroneously granted the parties joint physical custody of Frances, (2) the chancellor erroneously failed to consider all of the *Albright* factors and ignored the fact that the factors favored her, and (3) the chancellor erroneously computed the child-support obligation of each party.

## STANDARD OF REVIEW

¶7. A chancellor's factual findings "will not be disturbed unless [he] was manifestly

2

wrong, clearly erroneous, or applied an erroneous legal standard." *Blakely v. Blakely*, 88 So. 3d 798, 801 (¶3) (Miss. Ct. App. 2012). Questions of law, however, are reviewed de novo. *Id.* "As long as substantial evidence supports the chancellor's findings, [we are] without authority to disturb them, even if [we] would have found otherwise as an original matter." *Id.* "Additionally, if the chancellor has made no specific findings, we generally proceed on the assumption that [he] resolved all such fact issues in favor of the appellee." *Id.*

ANALYSIS

I.    *Joint Physical Custody*

¶8.    Mackie first argues the chancellor erroneously granted joint physical custody of Frances since the record shows she and Chance cannot cooperatively share custody.[3] Joint custody may be awarded in the discretion of the court, upon application of one or both parents. Miss. Code Ann. § 93-5-24(3) (Rev. 2013). Here, Chance requested joint custody of Frances. "'[J]oint physical custody' means that each of the parents shall have significant periods of physical custody." Miss. Code Ann. § 93-5-24(5)(c). "Joint physical custody shall be shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents." *Id.* "[U]nless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody." *Crider v. Crider*, 904 So. 2d 142, 147 (¶13) (Miss. 2005). However, "[t]his is for the chancellor to determine as he or she is in the best position to evaluate the credibility, sincerity, capabilities

_____

[3] Although the chancellor did not specify "joint physical custody," the record shows he granted "shared physical custody" of Frances, not custody to Mackie and visitation with Chance.

and intentions of the parties." *Id*.

¶9. Here, although Mackie opposed Chance's request for joint physical custody, the record shows both Mackie and Chance are capable of sharing joint custody cooperatively. Although the parties do not always agree, they are willing and able to communicate with each other regarding Frances. Additionally, the parties successfully worked together to implement the visitation schedule ordered by the chancellor. Moreover, both parties testified that they wanted Frances to be close to the other.

¶10. Mackie asserts that the "very nature of the pleadings filed by both indicates that [the parties] cannot cooperatively have shared custody of [Frances]." Thus, according to Mackie, mere allegations of bad acts or conduct by one parent against the other would automatically prohibit the consideration or award of joint custody, regardless of the evidence at trial. We disagree and find Mackie's assertion would abrogate the chancellor's role and authority.

¶11. Despite Mackie's criticism of Chance and her opinion that she is capable of providing a more stable environment for Frances, the record does not reflect any inability to cooperatively share custody of Frances. Accordingly, we find the chancellor's award of joint physical custody is supported by substantial evidence in the record and was not manifestly wrong or clearly erroneous.

II. *Albright Factors*

¶12. Mackie next argues the chancellor failed to consider all of the *Albright* factors when making his custody determination. "As with all child-custody cases, 'the polestar consideration is the best interest and welfare of the child.'" *Webb v. Webb*, 78 So. 3d 933,

4

936 (¶8) (Miss. Ct. App. 2012) (quoting *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)). In *Albright*, the Mississippi Supreme Court outlined several factors to be considered when determining which parent should be granted custody. *Albright*, 437 So. 2d at 1005. These factors include: (1) the age, health, and sex of the child; (2) the continuity of care prior to separation; (3) the parenting skills of each parent, (4) the willingness and capacity to provide primary child care; (5) the employment and employment responsibilities of each parent; (6) the physical and mental health and the age of the parents; (7) the emotional ties between the parent and child; (8) the moral fitness of the parents; (9) the home, school, and community record of the child; (10) the preference of a child twelve years of age or older; (11) the stability of the home environment; and (12) other relevant factors in the parent-child relationship. *In re Dissolution of Edwards,* 189 So. 3d 1284, 1286 (¶7) (Miss. Ct. App. 2016) (citing *Albright*, 437 So. 2d at 1005). The chancellor is only required to address those *Albright* factors that are applicable to the case before him. *Id*. at (¶8).

¶13. Here, the record shows the chancellor considered the *Albright* factors and specifically addressed seven of the twelve factors. The five factors not specifically noted by the chancellor include the willingness and capacity to provide primary care, the moral fitness of the parents, the home, school, and community record of the child, the preference of the child, and the stability of the home environment.

¶14. The home, school, and community record of the child, as well as the preference of the child, are not applicable in this case, as the child was only two years old at the time of trial.[4]

---

[4] Although the record indicates Frances is in daycare, there was no testimony regarding her experience at daycare and no records were provided from the facility.

Although the chancellor did not specifically note the remaining three factors, significant evidence was adduced by each party relevant to each factor and the determination of custody. We discuss the testimony regarding these factors.

### 1. The willingness and capacity to provide primary care

¶15. Both Mackie and Chance testified regarding the care each provides to the child when in his or her custody. Chance testified that when he and Mackie lived together, he would feed, rock, and bathe Frances. Chance specifically stated he wanted equal time with his daughter and emphasized that there was nothing Mackie could do for Frances that he could not.

¶16. Additionally, both Mackie and Chance are employed and capable of providing care for Frances. Mackie testified that shortly after Frances's birth, Chance volunteered to put her on his insurance through his employment, and to pay all medical and pharmacy bills.

### 2. The moral fitness of the parents

¶17. As the chancellor noted, Mackie testified regarding "all the bad things about [Chance]." Specifically, Mackie testified that Chance had a violent nature, was a convicted felon, and had drug and mental health issues. However, the testimony revealed otherwise.

¶18. When asked about Chance's violent nature, Mackie was able to recall only two incidences since the birth of Frances. One incident was denied by Chance and was admittedly not raised by Mackie at any time prior to trial. The other incident involved confusion over whether Mackie's then boyfriend, who Chance had not yet met, was allowed around Frances. Mackie's mother testified about an incident with Chance at her house.

However, she admitted that following this incident, Mackie voluntarily moved in with Chance.

¶19. Additionally, although the record shows Chance was previously convicted of arson, the conviction occurred in 2007, six years prior to the birth of Frances. The record further shows Chance tested positive in 2012 for marijuana. However, there was no evidence of any additional failed drug tests. Moreover, Chance stated he is subject to random drug tests at work.

¶20. With regard to Mackie's claim of mental health issues, the chancellor found nothing to validate this claim. Chance testified that he was previously prescribed medication for bipolar disorder in 2012-2013, but he was never clinically diagnosed with the disorder. Chance explained that he does not have mental health issues, but he saw a physician in order to help deal with the relationship issues he was having with Mackie. Chance further testified that he had never hit or pushed Mackie.

¶21. When asked about her complaints against Chance, Mackie simply stated she did not believe Chance spent quality time with Frances "based on what [she] [saw] when [she] lived with him." However, the record shows Mackie and Chance only lived together for a few months. Mackie admitted that she had no complaints about the way Chance has taken care of Frances since the temporary visitation order was entered.

### 3. The stability of the home environment

¶22. The testimony shows both Mackie and Chance have a stable home. Mackie currently lives with her father; Chance lives in a house down the street from his mother. Both live in

Jones County, Mississippi. Although Chance has to be at work at 7:00 a.m., his mother is able to take Frances to daycare in the morning, and Chance picks her up in the afternoon when he gets off work at 3:30 p.m.

¶23. Although the chancellor did not conduct a detailed analysis of each *Albright* factor, the record shows he considered the factors and addressed those factors he determined applied in this case. "All the factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Edwards*, 189 So. 3d at 1286 (¶8) (citing *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)).

¶24. In light of the amount of evidence adduced at trial relevant to the *Albright* factors, including the three factors the chancellor did not specifically note, and the fact that each parent was shown to be a good and fit parent, we find the chancellor's failure to specifically address each *Albright* factor was not reversible error. *See Huseth v. Huseth*, 135 So. 3d 846, 858-59 (¶¶36-39) (Miss. 2014).

¶25. Mackie further argues the chancellor erred in his consideration of the *Albright* factors. Specifically, Mackie claims the chancellor ignored the fact that the *Albright* factors favored her. However, as the trial transcript clearly shows, the chancellor noted that the factors "slightly favor[ed] Mackie." Nevertheless, the chancellor found that it was in the child's best interest to have a relationship with both parents.

¶26. A chancellor "need not decide that every factor favors one parent over the other." *Edwards*, 189 So. 3d at 1286 (¶8). As properly noted by the chancellor, *Albright* is not "a mathematical formula where custody must be awarded to the parent who 'wins' the most

8

factors." *Id*. The record shows both Mackie and Chance are good parents. While Mackie expressed concerns over Chance, those concerns were more directed toward her relationship with Chance, and not Chance's relationship with his daughter. "[T]he relationship of parent and child is for the benefit of the child, not the parent." *Id*. at (¶6). Although Mackie believes she is in a better position to provide a more stable environment for Frances, there is nothing in the record to indicate Chance is unable to do the same.

¶27. Overall, we find the chancellor's findings were neither manifestly wrong nor clearly erroneous, and are supported by substantial evidence in the record.

> ### III. Child Support

¶28. Mackie last argues the chancellor erroneously computed child support. Mackie asserts that "the [c]hancellor acknowledged at the temporary hearing that [the Department of Human Services (DHS)] had already established [Chance's] child-support obligation."[5] However, the record indicates Chance was never ordered to pay child support by DHS. Indeed, both Mackie and Chance acknowledged that no DHS order was ever entered.

¶29. Mackie further claims the chancellor "engaged in his own computation of the child support obligation that is not supported by or authorized by statute." We disagree. The chancellor ordered that Chance would have physical custody three days per week, and Mackie would have physical custody four days per week. The chancellor found that child support for the minor child would be based "upon 14 percent of each party's adjusted-gross income" and that each party "shall pay child support in proportion to their periods of shared

---

[5] The temporary order incorrectly stated that an order had been entered by DHS for child support. This mistake was clarified at trial.

custody and their incomes."[6]  We find statutory support for the chancellor's decision.

¶30.    Mississippi Code Annotated section 43-19-101(1) (Rev. 2015) provides that 14% of a party's adjusted gross income should be awarded for the support of one child.  Pursuant to section 43-19-101(2), the percentage outlined in subsection (1) applies unless the court "makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in section 43-19-103."  Under Mississippi Code Annotated section 43-19-103(g) (Rev. 2015), the "particular shared parental arrangement" is a factor the chancellor may consider in his adjustment of the statutory guidelines established by section 43-19-101(1).  Miss. Code Ann. § 43-19-103(g).

¶31.    Here, the record shows that the chancellor found the statutory percentage, as outlined in section 43-19-101(1), should be adjusted based on the parties' joint custody arrangement, "in proportion to their periods of shared custody."  The chancellor further ordered that Chance shall continue to provide insurance for Frances.  Such decision is supported and authorized by statute.  Accordingly, we find no error and affirm.

¶32.    **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  TINDELL, J., NOT PARTICIPATING.**

---

[6] The chancellor stated he would leave it up to the attorneys to "do the math." Counsel subsequently submitted an exhibit, which outlined the child-support calculation.