ISHEE, J„ for the Court:
¶ 1. In November 2008, Jimmy Daniels filed a complaint in the Lauderdale County Circuit Court against Parker and Associates Inc., The Liberty Group, and Dalvin Kendall Parker.[1] In the complaint, Daniels alleged they owed him money held in an escrow account, which was earned during their employment relationship. Daniels further alleged Parker breached the implied duty of good faith and fair dealing by refusing to provide him with a release from their contracts so that he could seek other employment. Based on a March 2011 motion, the trial court granted summary judgment in favor of Parker. Aggrieved, Daniels now appeals. On appeal, Daniels argues there were genuine issues of material fact as to whether Parker violated the implied duty of good faith and fair dealing, rendering summary judgment improper. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Parker and Associates is a field marketing organization that sells insurance products issued by various insurers. The Liberty Group is a subsidiary of Parker and Associates, and Dalvin is a shareholder of Parker and Associates. In November 2005, Daniels began selling insurance products for Parker. It is undisputed that Daniels was an independent contractor and not an employee of Parker.
¶ 3. When Daniels began selling insurance for Parker, he signed a broker agreement, a pre-contract agreement, an agreement to work leads, and an adjusted premium-per-lead cost chart. Upon selling an insurance policy, Daniels was paid *799 a set fee from Parker. After submitting the insurance application, his commission was deposited into Parker’s “Agent-Trax” system. This was essentially an advanced commission. If the application was later cancelled by the policy owner or rejected by the insurer, Parker “charged back” the advanced commission it previously paid to Daniels. In addition to any charge backs incurred, Daniels paid Parker for other expenses, such as postage and shipping.
¶ 4. Because of the charge backs, Parker established an escrow account in which a certain percentage of Daniels’s advanced commission was deposited. The escrow account was used to offset the cost of the charge backs. Initially, ten percent of Daniels’s advanced commission was placed in the escrow account, that number grew to twenty-five percent, and eventually to thirty-five percent. In December 2007, Daniels stopped selling insurance policies through Parker. Parker asserts that after the relationship with Daniels ended, Daniels still incurred charge backs which resulted in a negative balance in the escrow account.
¶ 5. In October 2008, as Daniels was seeking employment selling insurance products for Pennsylvania Life (Penn Life), he sought a release from his contracts with Parker. Penn Life required such a release before employing Daniels. Daniels alleged a release was required because the agreement between himself and Parker to work leads created an exclusive agreement. The agreement to work leads stated in pertinent part:
In consideration that I, [Daniels], may work the Parker and Associated Policy Holder List of the Ken Parker Agency, I agree to represent solely Parker and Associated when soliciting these leads. I will in no way induce a policy holder to leave Parker and Associates or purchase a product that would replace his or her existing Parker and Associates policy. I will return all policyholder lists and names with copies or duplications of any manner.
While Daniels asserted this language created an exclusive contract, Parker asserted the contract only restricted Daniels when he was working from Parker’s policyholder list. Furthermore, Parker asserted the release was simply a Penn Life requirement to ensure Daniels had met all of the financial obligations he had to Parker.
¶ 6. Ultimately, Parker refused to provide a release because the company asserted that Daniels owed over $24,000 in charge backs, and they would only provide a release if Daniels signed a promissory note for the amount owed. Daniels maintained that he did not owe the money. Rhonda Herring, a paralegal at Phelps Dunbar, a law firm hired by Daniels, contacted Parker and informed them that Parker’s records did not match Daniels’s records. One such disputed charge was a commission paid on Coventry policies. Daniels asserted he never wrote a policy for Coventry, and, thus, could not have incurred charge backs related to that account.
¶ 7. On November 19, 2008, Daniels filed a complaint against Parker. In the complaint, Daniels sought money held in the escrow account for the $825 per application he was paid.[2] He also sought punitive damages for Parker’s “outrageous conduct” of not providing a release. He alleged Parker’s failure to provide a release was a breach of contract. Finally, Daniels sought a declaratory judgment “declaring and enjoining [Parker] from refusing to release [Daniels] from his agency contract *800 so that he can begin employment with Pennsylvania Life.”
¶8. On April 13, 2009, Parker filed a counterclaim. The counterclaim asserted that Daniels owed Parker $26,317.50 in charge backs. After applying the amount of $3,806.25 left in the escrow account, there was a remaining balance of $22,511.25 owed. Accordingly, Parker sought damages in the amount of $22,511.25.
¶ 9. On March 21, 2011, Parker filed a motion for summary judgment. The motion requested summary judgment on the first issue because there was no evidence Parker owed Daniels any unpaid sums for insurance applications. In fact, according to Parker, the evidence showed that Daniels owed Parker for charge backs. On the second issue, Parker noted that Daniels was an independent contractor, not an employee; there was no exclusive contract from which a release was required; the release was a Penn Life requirement, not a Parker requirement; and Parker could not truthfully state in a release that Daniels no longer had any financial obligation to the company.
¶ 10. On July 18, 2011, the trial judge granted Parker’s motion for summary judgment. The trial judge found that Daniels “failed to provide any evidence whatsoever in support of his claim that [Parker] owed him $30,000 in commission fees”; thus, Daniels failed to raise any genuine issues of material fact. The trial judge further found the release requirement was a Penn Life requirement and had no relation to any contracts between Parker and Daniels. Therefore, the trial judge held there was no contractual obligation between Daniels and Parker and there can be no breach of contract. Accordingly, the trial judge granted summary judgment in favor of Parker. Daniels appeals arguing the trial court erred by finding there were no genuine issues of material fact and granting summary judgment.
DISCUSSION
¶ 11. Summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). We review a trial court’s grant of summary judgment de novo. Thomas v. Bradley, 987 So.2d 1020, 1024 (¶ 12) (Miss.Ct.App.2008) (citing Mantachie Natural Gas v. Mississippi Valley Gas Co., 594 So.2d 1170, 1172 (Miss.1992)). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. Watson Quality Ford, Inc. v. Casanova, 999 So.2d 830, 833 (¶ 7) (Miss.2008) (citing Estate of Johnson v. Chatelain, 943 So.2d 684, 686 (¶ 7) (Miss.2006)). “The evidence must be viewed in the light most favorable to the non-moving party.” Id.
¶ 12. Daniels argues that Parker’s refusal to provide Daniels with a release from their “exclusive contract” violated their duty of good faith and fair dealing. Daniels’s argument centers around the assertion that the agreement to work leads created an exclusive contract from which a release was required in order to pursue other employment. Parker contends that no contract existed at the time the release was requested because the relationship had ended months prior to the request. Furthermore, the contract did not create an exclusive contract for which a release was required; therefore, their failure to provide a release cannot constitute a breach of contract.
*801 ¶ 13. “The duty of good faith and fair dealing arises from the existence of a contract between parties.” Am. Bankers’ Ins. Co. of Fla. v. Wells, 819 So.2d 1196, 1207 (¶ 35) (Miss.2001). “[T]he claim of breach of the covenant of good faith ... asserts a [claim in] tort, one flowing from tortious breach of contract.” Lippincott v. Miss. Bureau Of Narcotics, 856 So.2d 465, 468 (¶ 11) (Miss.Ct.App.2003) (citing Braidfoot v. William Carey College, 793 So.2d 642, 651 (¶28) (Miss.Ct.App.2000)). Thus, to have a breach of the duty of implied good faith and fair dealing there must first be an existing contract and then a breach of that contract.
¶ 14. Here, at the time of the alleged breach of good faith and fair dealing, the parties were no longer contractually obligated to one another. Daniels ceased selling insurance through Parker in December 2007. Thus, by the time Daniels requested a release, in October 2008, he had not done business with Parker for ten months. Daniels even admits in his brief that “[t]hey agreed to cancel that arrangement.” Accordingly, at the time the release was requested there was no longer a contractual obligation between the parties.
¶ 15. Moreover, even if the contract was still in existence, Parker did not breach the contract by failing to provide a release since no release was required under the contract. It is clear that there was no exclusive contract, and the release requirement was a Penn Life requirement to ensure that Daniels did not still owe money to Parker. Daniels’s argument that the agreement to work leads created an exclusive contract is based on the following language: “I agree to represent solely Parker and Associated [sic] when soliciting these leads.” However, that language only limited Daniels from “inducting] a policy holder to leave Parker and Associates or purchasing] a product that would replace his or her existing Parker and Associates policy” when working from Parker’s policyholder list. The contract did not limit Daniels when he was not working from that list. Because the contract did not form an exclusive agreement, no release was required based on that contract.
¶ 16. Furthermore, Sutter Smith, a Penn Life representative, stated in his affidavit that the release was a standard policy of Penn Life. The release was required to show that Daniels had “made appropriate arrangements with his prior marketing organization ... to meet any financial obligations he [had] with that organization or agency, such as payment of lead expenses, compensation advances, loans, overhead, postal charges, etc.” This same sentiment was reiterated by Stephen Voss, Penn Life’s human resources director and assistant vice president, in his affidavit. Accordingly, the release requirement had no relation to any agreements between Parker and Daniels. Therefore, the failure to provide a release does not constitute a breach of contract.
¶ 17. Finally, even if a release was required under the contract, Parker’s failure to provide a release was valid based on the fact that Daniels owed the company money. Parker asserted that Daniels still owed the company $22,511.25 in charge backs; therefore, they were unable to provide a truthful release attesting that Daniels no longer had any financial obligations to the company. While Daniels maintained that he did not owe the money, he provided no proof to rebut Parker’s claim. Daniels now argues that because he no longer owes the amount claimed, Parker was initially wrong in their figure. However, according to Parker, the amount due has decreased “due to, among other things, renewal commissions paid to Parker on policies sold by Daniels and override commissions for agents in his down-line.”
*802 Therefore, even if a release was required, Parker would have been justified in refusing to provide a release based on the fact that Daniels still owed money to the company.
¶ 18. We find that at the time of the alleged breach of good faith and fair dealing, the parties were no longer contractually obligated. Even if the parties were contractually obligated at that time, we find Parker’s failure to provide a release does not constitute a breach of contract. Accordingly, there are no genuine issues of material fact, and this issue is without merit.
¶ 19. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. All Appellees will hereinafter be referred to collectively as Parker unless the context requires otherwise.

. Daniels does not appeal this issue.