MAXWELL, J.,
for the Court:
¶ 1. Determining child custody is among the most difficult decisions our chancellors must make. And our appellate review of custody decisions is narrow — we will only reverse if the chancellor applied incorrect legal standards or his factual findings were manifestly wrong or clearly erroneous.
¶ 2. Here, the chancellor made the difficult decision that it was in the best interest of a child for her grandparents to be awarded custody, instead of her mother, who was her sole surviving parent. He arrived at this conclusion by applying the correct legal standard for a custody determination between a parent and grandparents — first, determining the natural-parent presumption had been lost and, second, conducting an on-the-record analysis of the Albright factors.[1]
¶ 3. While the mother challenges the chancellor’s factual findings regarding her drug abuse, sexual relationships, and parenting skills — findings that led him to conclude she had not only lost the natural-parent presumption but also that custody should be awarded to the grandparents— we cannot say his findings were manifestly wrong or clearly erroneously. Though the mother presented conflicting evidence, the chancellor found much of this evidence was not credible. As it was the role of the chancellor to make credibility findings and weigh the evidence as he saw best, and as it is not the role of this court to second guess custody determinations absent clear error, we affirm the chancellor’s judgment awarding custody to the grandparents.
Background
¶ 4. The mother in this case is Denise Irle. The grandparents are Patty and La-virl Foster. The Fosters’ son, David, fathered two[2] of Irle’s four children: Britney, born July 1999; and Nathaniel (“Chase”), bom July 2002. David, who never married Irle, had been Britney and Chase’s primary caretaker. But when Britney was ten and Chase was eight, David died. And Britney and Chase went to live with Irle.
¶ 5. A year and a half later, the Fosters petitioned for custody of both children. Before the chancellor ruled on their petition, they reached an agreement with Irle — they would be granted custody of Chase, and Irle would be granted custody of Britney. And the chancellor entered an agreed order to that effect.
¶ 6. But the very next month, something happened that prompted the Fosters to ask the chancellor to award them custody of Britney too. They learned Britney had been removed from Irle’s care by the Department of Human Services (DHS). At an emergency hearing, the Fosters were granted temporary custody of Britney. A guardian ad litem (GAL) was also appointed. After a final custody hearing, the Fosters were granted permanent custody of Britney, in addition to Chase.[3]
¶7. Irle timely appealed. She challenges the chancellor’s determinations (1) that she lost her natural-parent presumption and (2) that it was in Britney’s best interest that the Fosters be awarded custody.
*28 Discussion
¶ 8, In reviewing Irle’s appeal, we have kept in mind our “narrow” standard of review in child-custody cases. Hamilton v. Houston, 100 So.3d 1005, 1008 (¶ 7) (Miss.Ct.App.2012). We will reverse a chancellor’s decision only if he “applied an improper legal standard” or “made findings that [were] manifestly wrong or clearly erroneous[J” Id. (citing Mabus v. Mabus, 847 So.2d 815, 818 (¶ 8) (Miss.2003)). And here, we cannot say that the chancellor did either.
I. Applying the Threshold Test
¶ 9. Irle’s first argument is that the chancellor failed to apply the correct law. Because the Fosters asked that the previous agreed order be “modified” to give them custody of Britney in addition to Chase, Irle asserts the chancellor had to first apply the test for custody modification—the material-change-in-eircum-stances test. And because the chancellor did not apply this test, Irle asks us to find reversible error.
¶ 10. But our supreme court has made clear that “[t]he principle that there must be a material change of circumstances which adversely affects a child’s welfare before a custody decree may be modified only applies between parents of the child.” Mabus, 847 So.2d at 819 (¶ 17) (emphasis added) (quoting Thomas v. Purvis, 384 So.2d 610, 612-13 (Miss.1980)). Despite the style of the Fosters’ petition, this -case does not involve custody modification between parents. So the material-change-in-circumstances test does not apply.
¶ 11. Instead—as the chancellor correctly recognized—the threshold test for changing custody from a parent to a third-party, such as grandparents, was whether the grandparents had overcome the legal presumption that it was Britney’s best interest for her sole parent to have custody. See id. Only then could the chancellor conduct an Albright analysis to determine whether it is in Britney’s best interest for her grandparents, versus her mother, to be awarded custody. In re Smith, 97 So.3d 43, 46 (¶¶ 7-9) (Miss.2012).
II. Rebutting the Natural-Parent Presumption
¶ 12. Irle’s second argument is that the chancellor erroneously found the natural-parent presumption had been rebutted. The natural-parent presumption may be rebutted “by a clear showing” of one of four circumstances:
(1) -the parent has abandoned the child;
(2) the parent has deserted the child;
(3) the parent’s conduct is so immoral as to be detrimental to the child; or
(4) the parent is unfit, mentally or otherwise, to have custody.
In re Smith, 97 So.3d at 46 (¶ 9) (citations omitted). In this case, the chancellor found Irle lost the presumption through the third circumstance—conduct by her that was so immoral as to be detrimental to Britney.

A, Chancellor’s Findings

¶ 13. In reaching this conclusion, the chancellor relied on evidence of Irle’s illegal drug use and sexual promiscuity. Irle’s suspected drug abuse had led DHS to remove Britney from Irle’s custody and had led the Fosters, to petition for Britney’s custody. While Irle asserts she was later cleared following the DHS investigation, the chancellor took into account other evidence of Irle’s drug abuse.
¶ 14. In particular, both the Fosters and the chancellor were deeply troubled by what happened when Irle attempted to move out-of-state with Britney. In order to find work, Irle planned for her and Britney to move in with Irle’s ‘sister. Irle *29 sent Britney ahead with a relative so Britney could start school. While Irle was to immediately follow, she instead wrecked her car and ingested a substance that left her incapacitated for four days. And her incapacitation left Britney alone in her aunt’s house, where her aunt’s boyfriend, a registered sex offender, also lived.
¶ 15. The chancellor also found that Irle’s having four children outside of marriage, as well as living with a man while she and the man were both married to other people, set a bad moral example for pre-teen Britney. See S.C.R. v. F.W.K., 748 So.2d 693, 700-01 (¶ 43) (Miss.1999) (affirming a chancellor’s finding that the father lost the natural-parent presumption by immoral conduct “demonstrat[ing] a profound lack of respect for honesty, truth, and rectitude of conduct [ (i.e., ‘moral virtue’) ]”); Brumfield, v. Brumfield, 49 So.3d 138, 149 (¶ 42) (Miss.Ct.App.2010) (finding no error in chancellor’s faulting mother for exposing her children to her extramarital sexual relationships). Irle claims that she was not having a séxual relationship with the man she and Britney had lived with. She points to both her and her “roommate’s” testimony that their relationship was platonic. The chancellor acknowledged this testimony but found it was not credible. As it is “the sole responsibility of the chancellor” to evaluate credibility of a witness and the weight of 'her testimony, Mabus v. Mabus, 890 So.2d 806, 816 (¶ 38) (Miss.2003), we find no abuse of discretion in the chancellor’s finding that the totality of the evidence amounted to a clear showing of immoral conduct.
¶ 16. Nor do we agree with Irle’s third argument — that the chancellor failed to consider whether the conduct, he found immoral was also detrimental to Britney. Irle is correct that proof of immoral conduct is not enough — the immoral conduct must be found to negatively impact the child. See Cockrell v. Watkins, 936 So.2d 970, 972-73 (¶ 8) (Miss.Ct.App.2006) (finding that the natural-parent presumption had remained intact because, while there was evidence of the father’s immoral conduct; the chancellor had determined that the child had “not been affected by his father’s conduct”). But here, while the chancellor did not use the words “detrimental to the child” in his final order, the transcript of his bench-opinion shows he did find Irle’s conduct was detrimental to Britney.
;. ¶ 17. This is .not a case where a parent’s sexual conduct or drug use was kept secret from the child. Britney was actually living with her mother and the man with whom she was having an extramarital affair. And Britney was directly impacted by Irle’s drug use — in one incident being left in a house with a registered sex offender because her mother was too strung out to come and get her. Cf. S.C.R., 748 So.2d at 700 (¶ 42) (finding -the father’s immoral conduct — spreading false allegations of child molestation — was detrimental to his son because the father instructed the son to lie as well). Thus, the chancellor correctly focused on what was required for him to find the natural-parent presumption had been rebutted — conduct, so immoral as to be detrimental to Britney.

B. GAL’s Recommendation

¶ 18. In finding no basis to reverse the chancellor’s finding that the natural-parent presumption had been rebutted, we note that the chancellor’s' finding did not follow the recommendation of the GAL. While also concerned with Irle’s immoral conduct, the GAL could not say her conduct was so immoral and detrimental to Britney to justify the loss of the presumption. Thus, the GAL had recommended Me be awarded custody based on the presumption.
*30 ¶ 19. Still, the chancellor was not bound by the recommendation of the GAL. But the chancellor did have to include in his findings the reason for rejecting the recommendation that Irle be awarded custody based on the natural-parent presumption. See J.P. v. S.V.B., 987 So.2d 975, 983 (¶ 20) (Miss.2008) (citation omitted) (“[I]f the court rejects the recommendations of the [GAL], .the court’s findings must include its reasons for rejecting the [GAL]’s recommendations.”). This he did. Because the chancellor explained his reason for rejecting the GAL’s recommendation and instead finding Irle'had acted so immorally as to lose the natural-parent presumption, we find no abuse of discretion in the chancellor’s coming to a different conclusion than the GAL.
III. Determining the Child’s Best Interest Under the Albright Factors
¶20. Finding the natural-presumption has been rebutted “does not end the inquiry.” In re Dissolution of Marriage of Leverock & Hamby, 23 So.3d 424, 431 (¶ 24) (Miss.2009). The chancellor “must go further to determine custody based on the best interests of the child through an on-the-record analysis of the Albright factors.” Id. (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).
¶ 21. Here, the chancellor conducted an on-the-record analysis of each Albright factor:
(1) age, health, and sex of Britney;
(2) continuity of Britney’s care;
(3) parenting skills of both Irle and the Fosters and their respective willingness and capacity to provide primary child care;
(4) Irle’s and the Fosters’ employment and the responsibilities of that employment;
(5) physical and mental health and age of Irle and the Fosters;
(6) emotional ties between Irle and Britney and the Fosters and Britney;
(7) moral fitness of Irle and the Fosters;
(8) the home, school, and community record of Britney;
(9) Britney’s custody preference;
(10) stability of the home environment and the employment of Irle and the Fosters, and other factors relevant to the parent-child relationship.
Lee v. Lee, 798 So.2d 1284, 1288 (¶ 15) (Miss.2001) (citing Albright, 437 So.2d at 1005). Based on this analysis, the chancellor concluded it was in Britney’s best interest for the Fosters to be awarded custody.
¶ 22. This leads us to Irle’s final argument — that the chancellor came to the wrong Albright conclusion. To support her argument, Irle emphasizes that the chancellor found half the factors favored her, while she attacks the evidence and credibility assessments the chancellor relied on to find the other factors favored the Fosters.
¶ 23. In particular, she asserts the chancellor wrongly characterized her roommate as her “boyfriend” to find the fact she lived with her boyfriend weighed against her parenting skills and moral fitness. But the issue of whether Irle was having a sexual relationship with her male roommate came down to credibility. “The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts.” O’Briant v. O’Briant, 99 So.3d 802, 806 (¶ 19) (Miss.Ct.App.2012) *31 (quoting Johnson v. Gray, 859 So.2d 1006, 1014 (¶ 36) (Miss.2003)). And here, we. cannot find the chancellor’s interpretation of Irle’s living situation was unreasonable. In Brumfield, we found no error in the chancellor’s weighing the moral-fitness factor against a mother who exposed her children to her extramarital sexual relationships. Brumfield, 49 So.3d at 149 (¶ 42). Similarly, we find no error in the chancellor’s finding that Irle’s making Britney live with a man who was not Irle’s husband weighed against her parenting skills and moral fitness.
¶24. Irle also asserts that the chancellor ignored evidence by others of her good parenting skills. Again, “[t]he chancellor has the ultimate discretion to weigh the evidence the way [he] sees fit in determining where the child’s best interest lies.” O’Briant, 99 So.3d at 806 (¶ 19) (quoting Blakely v. Blakely, 88 So.3d 798, 803 (¶ 17) (Miss.Ct.App.2012)). The record shows that in his Albright analysis the chancellor weighed the good and the bad regarding Irle’s parenting of Britney. And it is not the role of this court.to reweigh that evidence.
¶25. Finally, regarding the factors of stability of employment and .stability of the home environment, Irle asserts the chancellor trapped her in a “Catch-22” — penalizing her for not having steady employment but also penalizing her for trying to move Britney out of state in an effort to gain steady employment. But we find no abuse of discretion in the chancellor’s consideration of Irle’s efforts to move Britney out of state as weighing against Irle. It was not the fact Irle tried to move with Britney so that Irle could get a job out of state that troubled the. Fosters and the chancellor — it was the fact Irle tried to move Britney into a house with a registered sex offender. Further, while “[t]here is no ‘hard and fast’ rule that the best interest of siblings will be served by keeping them together,” it was within the chancellor’s discretion to consider as relevant the fact Irle’s move would have separated Britney from Chase, her only sibling who shared the same father. Copeland v. Copeland, 904 So.2d 1066, 1076 (¶ 43) (Miss.2004) (citation omitted).
¶26. As the chancellor acknowledged, this custody decision was not clear-cut. The chancellor was acutely aware that his decision would separate Britney from her only living parent. But the chancellor awarded the Fosters custody based on what he.determined would be in Britney’s best interest. In affirming the chancellor’s decision, we are mindful that “[determining custody of a child is not an exact science,” but instead “one of the most difficult decisions that courts must make.” O’Briant, 99 So.3d at 805 (¶ 15) (quoting Lee, 798 So.2d at 1288 (¶ 15); Brewer v. Brewer, 919 So.2d 135, 141 (¶ 21) (Miss.Ct.App.2005)). “[E]ven when the trial judge sensitively assesses the factors noted in Albright and [its] progeny, the best the [chancellor] can offer is a good guess.” Love v. Love, 74 So.3d 928, 932 (¶ 17) (Miss.Ct.App.2011) (quoting Buchanan v. Buchanan, 587 So.2d 892, 897 (Miss.1991)). Because it is not the role of this court tó “second guess” that decision — but to instead affirm that decision in the absence of legal error or manifestly erroneous factual findings — we affirm the chancellor’s judgment that awarded the Fosters custody of Britney.
¶ 27. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND FAIR, JJ., CONCUR. IRVING, P.J., *32 DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY JAMES, J.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. Irle has two other children, each fathered by a different man.

. The custody of Chase is not at issue in this appeal.