# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01817-COA

**CLEONDRA JASMINE CARTER**                                          **APPELLANT**

**v.**

**MARIO ROBERT RAMON ESCOVEDO A/K/A**                      **APPELLEE**
**MARIO ESCOVEDO**

DATE OF JUDGMENT:                 10/31/2014
TRIAL JUDGE:                        HON. VICKI B. DANIELS
COURT FROM WHICH APPEALED:  DESOTO COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     JERRY WESLEY HISAW
                                     JENNIFER LOUISE MORGAN
ATTORNEY FOR APPELLEE:       BYRON RUSSELL MOBLEY
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     AWARDED FATHER CHILD CUSTODY
DISPOSITION:                      AFFIRMED IN PART; REVERSED AND
                                     REMANDED IN PART - 09/29/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**MAXWELL, J., FOR THE COURT:**

¶1.    Cleondra Carter appeals the chancellor's grant of child custody to her daughter's father, Mario Escovedo, along with the amount of visitation and overnight visitor restrictions. We affirm the chancellor's grant of sole physical and sole legal custody to Escovedo. But because Escovedo concedes Carter is entitled to greater visitation, we reverse and remand that award. On remand, the chancellor should grant Carter more visitation.

### Facts and Procedural History

¶2.    On November 29, 2010, Carter and Escovedo had a daughter out of wedlock, Kylee

Sue Escovedo. Carter appeared on MTV's show "Sixteen and Pregnant," while she was pregnant with Kylee. And she was seventeen years old when Kylee was born. For the first few years of Kylee's life, Carter and Escovedo lived together. The couple then split up and began fighting over Kylee.

¶3. On February 26, 2014, Escovedo filed a complaint for child custody. And an order was entered granting Escovedo sole legal and physical custody, subject to Carter's visitation rights. Carter was awarded visitation every other weekend from Friday night to Sunday night and also received two weeks during the summer. Every year she got Kylee for three hours on her birthday and three hours on Kylee's birthday, and on Mother's Day. Every other year Kylee was to visit her on New Year's Day, Easter, Memorial Day, July 4th, Labor Day, Thanksgiving, and Christmas.

¶4. The order also directed that Carter "shall have such other reasonable visitation . . . as can be mutually agreed upon by the parties." But there was one specific restriction that Carter disputes on appeal. The chancellor prohibited "overnight visitors of the opposite sex (or of an intimate nature) unless related by blood or marriage" while Kylee was with Carter or Escovedo.

¶5. Carter appealed the chancellor's order.

## Discussion

### I. Child Custody

¶6. On appeal, Carter insists the chancellor improperly weighed the evidence in her

*Albright* analysis.[1] Carter believes the evidence should have been interpreted differently and weighed favorably toward her. But "*Albright* [is] a guide, not a formula[.]" *O'Briant v. O'Briant*, 99 So. 3d 802, 805 (¶14) (Miss. Ct. App. 2012). When a chancellor is making a custody decision, she may "weigh the evidence as she sees fit[.]" *Id.* Because the chancellor thoroughly addressed the *Albright* factors, weighing the evidence as she saw it, we find no reversible error.

### A.    Standard of Review

¶7.    In child-custody decisions, the polestar consideration is the best interest of the child. *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009) (citing *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002)). We cannot substitute our judgment for the chancellor's. *Id.* Instead, our standard of review is quite narrow. *Id.* We only reverse child-custody determinations if the chancellor is manifestly wrong, clearly erred, or applied the wrong legal standard. *Id.* When chancellors properly apply and consider the *Albright* custody factors, there is no manifest error. *Smith v. Smith*, 614 So. 2d 394, 397 (Miss. 1993).

### B.    *Albright* Factors

¶8.    In deciding child-custody cases, chancellors must apply the *Albright* factors. This requires the chancellor to consider and make findings about:

(1)    [the] age, health, and sex of the child;

---

[1]  *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

(2) [which] parent . . . had the continuity of care prior to the separation;

(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;

(4) the employment of the parents and responsibilities of that employment;

(5) physical and mental health and age of the parents;

(6) emotional ties of parent and child;

(7) moral fitness of the parents;

(8) the home, school and community record of the child;

(9) the preference of the child at the age sufficient to express a preference by law;

(10) [the] stability of [the] home environment and employment of each parent and other factors relevant to the parent-child relationship.

*Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001) (citing *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

### C.     Chancellor's *Albright* Analysis

¶9.     The chancellor made findings on each *Albright* factor.  We review these findings in turn.

#### i.     *Age, Health, and Sex of the Child*

¶10.    Kylee was a "healthy child with the exception of the anxiety issues," which the chancellor found were caused by the parents' split.  This factor favored neither parent.

¶11.    Kylee was almost four at trial—a factor the chancellor deemed neutral.  Still, Carter feels Kylee's age favored her.  She cites the tender-years doctrine, arguing "if the mother of

a child of tender years (i.e.[,] early in development) is fit, then she should have custody." *Lee*, 798 So. 2d at 1289 (¶17). But our supreme court has "significantly weakened the once strong presumption that a mother is generally best suited to raise a young child." *Id*. Now, our high court sees age and sex of the child as "merely factors to be considered under *Albright*[.]" *Id*.

### ii. *Continuity of Care Prior to the Separation*

¶12. While each parent claimed to spend the most time with Kylee, Escovedo worked more than Carter. So based on mere time spent together, Carter was probably with Kylee more. But after hearing Escovedo's "witnesses testify about the things he did and the care that he had" for Kylee, the chancellor determined continuity of care was a "close call." One she found favored neither parent.

¶13. Carter saw herself as a stay-at-home mom when the three lived together—a factor she claimed favored her. However, Carter was also in school then, and Escovedo's mom and sister frequently kept Kylee too. We find substantial evidence supports the chancellor's neutral treatment of this factor.

### iii. *Best Parenting Skills, and Willingness and Capacity to Provide Primary Child Care*

¶14. As to parenting skills, the chancellor found Escovedo wanted to teach Kylee discipline and responsibility. Escovedo was "looking at the big picture," putting Kylee's interests "first and foremost above his own," and was "willing to do whatever it takes" to parent Kylee, even if it meant "communicating with the mother who he does not get along with anymore."

5

To the chancellor, Escovedo's willingness to work with Carter spoke "volumes" for his "maturity and parenting skills." She found this factor favored Escovedo.

¶15. Both parents expressed willingness to provide primary childcare. And the chancellor found both had the capacity, so she found this factor was neutral.

¶16. Again, Carter hoped to have been favored—this time as having the better parenting skills. But her argument is based on the weight the chancellor assigned certain facts. This is something appellate courts do not tamper with, since it is solely the chancellor's role to weigh evidence and judge witness credibility. *Love v. Love*, 74 So. 3d 928, 933 (¶22) (Miss. Ct. App. 2011).

### iv. *Employment of Each Parent and Responsibilities of that Employment*

¶17. Both parents' employment allowed them to spend time with Kylee. While Escovedo worked more hours, he arranged for childcare while at work and maintained he could alter his schedule if needed. Carter was a waitress, working about three nights a week. She too said she could rearrange her schedule if necessary and had backup childcare with her sister. This factor was neutral.[2]

### v. *Physical and Mental Health and Age of the Parents*

¶18. Both parents are young and in good physical and mental health. This factor was also deemed neutral. Carter does not challenge this finding.

---

[2] Though Carter claims the chancellor found this factor favored Escovedo, we note that the chancellor actually found this factor was equal.

6

### vi.  Emotional Ties of the Parent and Child

¶19.  "[I]t was very obvious" to the chancellor that both parents "love [Kylee] very much." The chancellor also felt Kylee "is very attached to both [parents]."  But the chancellor was swayed somewhat by the "emotion" she saw from Escovedo.  So she found this factor favored Escovedo slightly.

¶20.  Though Carter is upset with the weight given to Escovedo's emotions while testifying, the weight and interpretation of evidence was for the chancellor to decide.  *Johnson v. Gray*, 859 So. 2d 1006, 1014 (¶36) (Miss. 2003) (citing *Chamblee v. Chamblee*, 637 So. 2d 850, 860 (Miss. 1994)).

### vii.  Moral Fitness of the Parents

¶21.  The chancellor did not harp on this factor much since the parties had Kylee out of wedlock.  And both parents were involved in other "romantic relationships."  The chancellor was, however, concerned Carter was "bringing a lot of different men around [Kylee] or sleeping with men with [Kylee] in the same bed."  These men were neither Kylee's father nor married to Carter.  Even Carter admitted she had slept with men in the same bed with Kylee. The chancellor found this factor favored Escovedo.

¶22.  Carter claims the chancellor should have considered Escovedo's prior drug conviction—an offense that occurred before Kylee was born.  While this conviction was something the chancellor was free to weigh against Escovedo, we do not find the chancellor's omission of this conviction from her *Albright* analysis necessarily undermines

7

her fitness-based findings. *See McDonald v. McDonald*, 39 So. 3d 868, 882 (¶44) (Miss. 2010) (father's nine-year-old drug conviction prior to the children's births did not weigh heavily against him since he was no longer using drugs and had matured). In other words, on these facts, we cannot say the chancellor manifestly erred in this finding.

### *viii.    Home, School, and Community Record of the Child*

¶23.    Kylee was too young to have a school record. But the chancellor did emphasize Kylee was very involved with both parents' families and Escovedo's mom and sister cared for her often—including taking Kylee to church. Because Escovedo's family was so involved in Kylee's life, this factor favored Escovedo.

¶24.    Though Carter claims the chancellor ignored that her family also cares for Kylee, the record shows the chancellor did indeed consider Kylee's involvement in both extended families.

### *ix.    Preference of the Child*

¶25.    This factor is inapplicable since Kylee was only three when the *Albright* analysis was conducted.[3]

### *x.    Stability of the Home Environment and Employment of Each Parent*

¶26.    These factors favored Escovedo. Carter argues the "stability of employment" factor

---

[3] "Under Mississippi law, a child under the age of twelve is too young to have [his or her] preference considered." *Mixon v. Sharp*, 853 So. 2d 834, 840 (¶29) (Miss. Ct. App. 2003).

should have favored her. Yet it is Escovedo who has worked for the same company since Kylee was born, while Carter has been through four different jobs (Applebee's, Delta Technical College, Valvoline, and Avon). Escovedo has lived in the same home for both his and Kylee's entire lives. And he was in the process of purchasing the home from his father. On the other hand, Carter lived in a one-bedroom apartment at the time of trial. Before that, she had lived with her cousin for a few months, moved in with her mother, and then lived with Escovedo.

### xi. *Other Factors*

¶27. Ultimately, the chancellor found Escovedo's willingness to work with Carter and communicate with her weighed in his favor. The chancellor was also impressed with Escovedo's ability to put Kylee first in his decision making.

### D. Conclusion

¶28. We find the chancellor properly applied and considered the *Albright* factors. *See Smith*, 614 So. 2d at 397 (there is no manifest error where a chancellor properly applies and considers the *Albright* factors). Our narrow review requires we give deference to the chancellor's factual findings, if they were supported by substantial evidence. *See Wilson v. Wilson*, 53 So. 3d 865, 867-68 (¶¶7, 10) (Miss. Ct. App. 2011). "'[T]he chancellor has the ultimate discretion to weigh the evidence the way she sees fit' in determining where the child's best interest lies." *Blakely v. Blakely*, 88 So. 3d 798, 803 (¶17) (Miss. Ct. App. 2012) (quoting *Johnson*, 859 So. 2d at 1013-14 (¶36)). And here, we find the chancellor's factual

9

findings were supported by substantial evidence. Simply put, the judge had the prerogative to weigh the evidence as she saw fit. We affirm the grant of sole physical and sole legal custody of Kylee to Escovedo.

## II.    Visitation

¶29.    Carter complains that the chancellor did not award her enough visitation. She was only given two weeks of summer visitation and wants at least five weeks during the summer. Escovedo "concedes this issue" and agrees Carter should have been awarded more visitation. Since both parties are in agreement, we reverse the amount of visitation awarded and remand the case to the chancellor to award more visitation to Carter. *See Wackenhut Corp. v. Fortune*, 87 So. 3d 1083, 1088 (¶11) (Miss. Ct. App. 2012) (where a party concedes an issue raised on appeal, remand is proper).

¶30.    On remand, the chancellor shall award at least five weeks of summer visitation to Carter. *See Crowson v. Moseley*, 480 So. 2d 1150, 1153 (Miss. 1985) ("[C]hildren at the least are entitled to the company of their mother two full week[]ends a month during the school year, with the visitation to terminate late Sunday afternoon as opposed to Sunday morning, and a five-week period during summer vacation."). Since Carter usually works weekends, on remand, the chancellor shall also revisit whether more time should be awarded Carter during the week and if more holiday time should be awarded.

## III.    Overnight Guest Restrictions

¶31.    Carter's final complaint is that the chancellor's order restricted overnight romantic

10

visitors. As the chancellor phrased it, there "shall be no overnight visitors of the opposite sex (or of an intimate nature) unless related by blood or marriage while the child is present." Carter believes this is too restrictive since there was no evidence the prohibition was necessary. We disagree.

### The Child's Best Interests Are Paramount

¶32. "Visitation should be set up with the best interests of the children as the paramount consideration, keeping in mind the rights of the non-custodial parent and the objective that parent and child should have as close and loving a relationship as possible, despite the fact that they may not live in the same house." *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992) (citing *Clark v. Myrick*, 523 So. 2d 79, 83 (Miss. 1988)). This is why "[v]isitation and restrictions placed upon it are within the discretion of the chancery court." *Id.*

¶33. Our supreme court has held "an extramarital relationship is not, per se, an adverse circumstance." *Id.* (quoting *Morrow v. Morrow*, 591 So. 2d 829, 833 (Miss. 1991)); *Ballard v. Ballard*, 434 So. 2d 1357, 1360 (Miss. 1983). So to restrict visitation of overnight guests of the opposite sex, there must be "something approaching actual danger or *other substantial detriment to the children*." *Id*. (emphasis added) (quoting *Cox v. Moulds*, 490 So. 2d 866, 868 (Miss. 1986)). Indeed, restrictions should be imposed when circumstances present "an appreciable danger of hazard cognizable in our law." *Id*. (quoting *Newsom v. Newsom*, 557 So. 2d 511, 517 (Miss. 1990)). If the presence of a lover would be detrimental to a child, restrictions may be appropriate. *Id*.

11

¶34. The chancellor was concerned Carter was "bringing a lot of different men around [Kylee] or sleeping with men with [Kylee] in the same bed." Carter lived in a one-bedroom apartment and admitted she had allowed men to sleep in the bed with both her and Kylee. Of particular concern was one of Carter's boyfriends, Michael.

¶35. Wendy Ward, Kylee's therapist, testified that Kylee suffered from anxiety. And Kylee had confided in Ward that she was scared of Michael. Ward testified that Kylee feared Michael when he "was mean." According to Kylee, Carter and Michael had fought in front of her, and Michael "made her feel scared and mad." Because of Kylee's anxiety over this boyfriend, Ward recommended neither party should have "romantic relationships spending the night when Kylee is present."

¶36. While we recognize our supreme court has not condoned per se visitation restrictions of overnight guests of the opposite sex, it is clear that such restrictions are in fact necessary when justified. And here, much of the chancellor's focus honed in on her duty to look out for the best interests of a then three-year-old girl. Based on Carter's admission of sharing her bed with Kylee and overnight romantic guests, and the therapist's testimony that Carter's boyfriend's presence was detrimental to Kylee, we find the chancellor tailored this prohibition to minimize the detriment to Kylee. We thus find the chancellor did not abuse her discretion in prohibiting overnight nonfamilial opposite-sex guests when Kylee is present.

¶37. **THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS**

12

**OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**