CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 34. I concur with the majority's finding that no issue exists as to Brown's argument regarding the application for joint custody. However, I find that the evidence in the record fails to support the chancellor's award of joint custody of K.B. to Brown and Anslum. Since I find that the chancellor abused his discretion in awarding joint custody, I would therefore reverse and remand.
 

 ¶ 35. I submit that the chancellor erred in his findings regarding the following
 
 Albright
 

 [5]
 
 factors, which in turn led to the chancellor's erroneous award of joint custody: continuity of care, parenting skills and willingness to provide primary child care, physical and mental health and age of the parents, and moral fitness of the parents. When reviewing an appeal of a child-custody decision, "our polestar consideration, like the chancellor's, must be the best interest of the child."
 
 O'Briant v. O'Briant
 
 ,
 
 99 So.3d 802
 
 , 805 (¶ 12) (Miss. Ct. App. 2012) ;
 
 see also
 

 Smith v. Smith
 
 ,
 
 206 So.3d 502
 
 , 512 (¶ 24) (Miss. 2016). Upon review, we cannot substitute our judgment for that of the chancellor; rather, "[w]e may only reverse a child-custody determination if the chancellor [was] manifestly wrong, clearly erred, or applied an erroneous legal standard."
 
 O'Briant
 
 , 99 So. 3d at (¶ 13). "When a chancellor properly applies and considers the child-custody factors from
 
 Albright
 
 , ... no manifest error [exists]."
 

 Id.
 

 ¶ 36. Regarding the factor of continuity of care, the chancellor found "[t]he continuity of care is neutral although the [c]ourt recognizes that [Brown] has exercised primary physical care [of K.B.] for approximately a year. Before that time, [Anslum] exercised primary physical care for approximately two years." However, the record reflects that Brown's mother, Marcia, testified that although both Anslum and Brown acted as K.B's primary care givers while they were still in a relationship, K.B. had actually "been with [Brown] the majority of the time" since their separation. Anslum's alleged former husband, Josh Cox, stated that he and Anslum moved in together a little less than a year after she and Brown separated. Cox testified that during this time, he often had to care for the children because Anslum's alcohol and substance abuse left her unable to provide care.
 

 ¶ 37. The chancellor held that the parenting skills factor "favor the father only slightly," explaining that Anslum made bad choices "early on in [K.B.]'s life." The chancellor opined that "evidence indicates that [Anslum] has since matured into a good parent and no such incidents have been reported in over two years." However, as stated, Josh Cox's testimony reflects that Anslum struggled with alcohol and substance abuse issues during the period of February 2014 until approximately May 2014, showing a lack of stability. The record reflects that at the time of trial, Anslum still received treatment for her anxiety from Dr. Joseph Kwentus, a psychiatrist. The record also reflects that Anslum had three children by three different men and that Anslum became pregnant by Warrington after only knowing him five or six months. Based on my review of the record, this factor clearly favors Brown.
 

 ¶ 38. The chancellor found that the willingness and capacity to provide child care "favors [Anslum,] who is a stay at home mom." The chancellor stated, however, that "both parents and their spouses are willing to care for [K.B.] and have extended families who are also willing to step in and help when needed." The chancellor also stated that he considered Warrington's testimony that "he intends to obtain a larger home for his family in order to have more space for the children." Brown, however, testified at trial that when he and Anslum lived together, he was the person who generally bathed and dressed K.B. on a daily basis. Brown also stated that during this time, he would take off work and care for K.B. as needed. Brown testified that he is currently employed in a job that provides him with sufficient income to care for K.B. Brown asserted that his job provides him with the flexibility to take off work and care for K.B. if needed. Brown also testified that K.B. was "a daddy's girl," and he explained that the two are very close. I therefore submit that this factor favors Brown.
 

 ¶ 39. The chancellor held that the factor regarding the physical and mental health of the parents was neutral, explaining that "[w]hile there is evidence of some instability early on, particularly with [Anslum], the testimony of the GAL at trial showed that since August 2014, there have been no further incidents that would indicate that she would be an unfit mother or that she was continuing in her previous irresponsible behavior. Evidence showed that [Anslum] has a life[-]long problem with depression which is now being successfully treated." Trial testimony reflects that prior to August 2014, Anslum suffered from anxiety and depression and abused alcohol and controlled substances. Testimony also reflects that in the years after her separation from Brown, Anslum required treatment at Brentwood Hospital on two occasions, including treatment for a drug overdose in August 2014. Anslum admitted at trial that she currently takes Valium and Enalapril to treat her anxiety and a panic disorder. The GAL also testified at trial, and set forth in her report to the chancellor, a description of two altercations where Anslum faked injuries and attempted to make it appear that someone hurt her. I submit that the record reflects that this factor favors Brown and that the record fails to support the chancellor's finding of this factor as neutral.
 

 ¶ 40. Regarding the moral-fitness factor, the chancellor stated that "[e]arly on in this case, it appeared that moral fitness would have favored [Brown]." The chancellor acknowledged Anslum's prior instability but held that "since she met and married J.C. Warrington, [Anslum] seems to have settled down." The chancellor ultimately concluded that "there was no evidence presented that showed [Anslum] to
 be morally unfit to be a mother to [K.B.]. Neither was there any evidence presented that would disqualify [Brown] from being morally fit to parent [K.B.]." However, as stated, trial testimony shows that for years Anslum abused alcohol and controlled substances, and she has even overdosed on drugs on more than one occasion since her separation from Brown. Anslum also currently suffers from anxiety and receives medical treatment. As stated, the record also reflects that Anslum had three children by three different men and that Anslum became pregnant by Warrington after only knowing him five or six months. The record reflects that the evidence shows this factor clearly favors Brown.
 

 ¶ 41. The GAL testified that based on her observations of K.B., both parties, and the homes of both parties, she recommended that Brown should have permanent primary physical custody of K.B. The GAL explained that Brown's home "is stable. It's adequate. That's where she's been. Bryce has been stable and he has been able to provide for her. She is in a day care setting which provides her a routine. It provides her education to help her to prepare for what lies ahead in kindergarten and the rest of her education." The GAL opined that K.B. "should certainly have visitation" with Anslum, though.
 

 ¶ 42. Regarding the GAL's report and recommendation, the chancellor set forth in his judgment that he "must disagree with the conclusions and recommendations as written." The chancellor explained that he felt inconsistencies existed between the GAL's report and her trial testimony. In acknowledging the importance of bonding with other siblings, the chancellor also opined that he felt that the GAL "has not given enough consideration to the entire family dynamic when making her recommendations." However, upon review of the record, I do not find the GAL's report inconsistent with the GAL's testimony or lacking in consideration of the entire family dynamic.
 

 ¶ 43. The chancellor also stated that "[w]hile not a deciding factor in the [c]ourt's decision, it is also noted that [K.B.] is a young female child and should be allowed more time to continue to bond with her mother." The record shows that K.B. was born on April 15, 2013, and she was three years old at the time of trial. Although the chancellor did not expressly name the tender-doctrine in his opinion, we recognize that "[a]ccording to the tender-years doctrine, if a child is of such tender age as to require the mother's care for [her] physical welfare, [she] should be awarded to the mother's custody."
 
 Montgomery v. Montgomery
 
 ,
 
 20 So.3d 39
 
 , 44 (¶ 22) (Miss. Ct. App. 2009) (internal quotation marks omitted). However, the supreme court has held that "the tender years doctrine has all but been subsumed into the
 
 Albright
 
 analysis."
 
 Lackey v. Fuller
 
 ,
 
 755 So.2d 1083
 
 , 1089 (¶ 30) (Miss. 2000). Now, "the age of a child is simply one of the factors that we consider in determining the best interests of the child."
 

 Id.
 

 ¶ 44. A review of the evidence in the record fails to support the findings of the chancellor and fails to support the award of joint custody. After my review of the record, I find that the chancellor erred in his application of several
 
 Albright
 
 factors. I would therefore reverse the chancellor's award of joint custody of K.B. to Brown and Anslum and remand for further proceedings consistent with this opinion.
 

 TINDELL, J., JOINS THIS OPINION.
 

 Albright v. Albright
 
 ,
 
 437 So.2d 1003
 
 , 1005 (Miss. 1983).