# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-IA-00310-SCT

*JAMES CRAIG IRVING*

*v.*

*JOHNNIE EVANS IRVING*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2010 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN THOMAS LAMAR, JR. |
| ATTORNEYS FOR APPELLEE: | JOY W. GRAVES |
| | MALENDA HARRIS MEACHAM |
| | CHARLES E. WINFIELD |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/18/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2010-CA-00355-SCT

*JAMES CRAIG IRVING*

*v.*

*JOHNNIE EVANS IRVING*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/2010 |
| TRIAL JUDGE: | PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN THOMAS LAMAR, JR. |

ATTORNEYS FOR APPELLEE:      JOY W. GRAVES
                                              MALENDA HARRIS MEACHAM
                                              CHARLES E. WINFIELD

NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS

DISPOSITION:                  REVERSED AND REMANDED - 08/18/2011

MOTION FOR REHEARING FILED:

MANDATE ISSUED:

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Chancery Court of DeSoto County granted James Craig Irving and Johnnie Evans Irving a divorce. James filed a Petition for Modification of his child-support payments, based on the change of circumstances brought about by the loss of his job, which had occurred three weeks prior to the chancellor's entry of the Order upwardly modifying James's support obligations. The chancellor declared that *res judicata* prevented James, in a subsequent petition for modification, from presenting evidence of his job loss occurring before the entry of this Order.

¶2. Aggrieved, James has appealed, alleging that the chancellor erred by ruling that *res judicata* prohibits James from providing evidence of his job loss in his petition for modification of child support. Finding that *res judicata* should not bar James from presenting evidence of his job loss, we are constrained to reverse the chancellor's findings and to remand this case to the Chancery Court of DeSoto County.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. On January 29, 2002, the Chancery Court of DeSoto County granted James and Johnnie a divorce. On November 5, 2008, Chancellor Vicki B. Cobb heard an action

between James and Johnnie dealing with an alleged arrearage of child support. On November 14, 2008, James lost his employment but failed to inform Chancellor Cobb about this change in his circumstances. Chancellor Cobb signed her Order upwardly modifying James's child support payments on December 3, 2008, *nunc pro tunc* to November 5, 2008. This Order instructed James to begin making payments on December 1, 2008.

¶4.    On January 14, 2009, Johnnie filed a Petition for Contempt seeking to enforce the December 3, 2008, Order, entered *nunc pro tunc* to November 5, 2008,[1] as well as a portion of the divorce decree, requiring the parties to share uncovered medical or dental expenses for their children. On April 1, 2009, James filed a Motion to Dismiss, Affirmative Defenses, Answer to the Petition for Contempt, and Counter-Petition for Modification in which he sought, *inter alia*, a modification of his child-support obligations because of his loss of employment on November 14, 2008.

¶5.    After the May 26, 2009, hearing on the Petition for Contempt, Chancellor Percy L. Lynchard, Jr. entered an Order on May 27, 2009, finding James in contempt and ordering him to pay past-due child-support obligations as well as one-half of his children's dental expenses and attorney's fees. Before the chancellor had entered this Order, James requested the chancellor to dismiss his Counter-Petition for Modification without prejudice.

¶6.    On May 29, 2009, James purged himself of contempt by paying the overdue amounts he was obligated to pay under the May 27, 2009, Order of Contempt, and again filed a

---

[1]For clarity's sake, we note that Chancellor Cobb, not Chancellor Lynchard, entered the December 3, 2008, Order, *nunc pro tunc* to November 5, 2008.

Petition for Modification, requesting that his child support obligations be reduced because of his loss of employment.

¶7. On June 24, 2009, Johnnie filed a Response to Petition for Modification and raised the defense of *res judicata*. On July 3, 2009, Johnnie filed a Motion to Dismiss on the same *res judicata* grounds, arguing that the change in circumstances upon which James had based his request for modification had occurred prior to the entry of the December 2008 Order modifying his child-support obligation and, therefore, *res judicata* barred James from litigating that change in circumstances.

¶8. On July 8, 2009, the chancellor granted Johnnie's motion to dismiss, in part,[2] finding *sua sponte* that James could not litigate regarding an alleged material change in circumstances that had occurred before the December 3, 2008, Order, because James had failed to act timely under Mississippi Rule of Civil Procedure 59(a). On July 21, 2009, the chancellor entered an Order reflecting his findings from the July 8, 2009, hearing.

¶9. James timely filed both a Motion to Reconsider and an Amended Motion to Reconsider. On November 17, 2009, the chancellor conducted a hearing on the Amended Motion to Reconsider. On February 2, 2010, the chancellor ruled on the Amended Motion to Reconsider and subsequently clarified his previous, July 21, 2009, Order by stating, *inter alia*:

> The previous order rendered by this Court on July 21, 2009 granting [Johnnie]'s motion to dismiss [James]'s petition for modification shall be

---

[2]Chancellor Lynchard granted Johnnie's motion to dismiss to the extent that James could not offer any evidence concerning events that occurred before December 3, 2008. The chancellor clarified this in his declaratory judgment.

4

amended to make it a declaratory judgment reflecting that the only relevant evidence pertaining to the motion would be any evidence arising after the entry of the decree of December 3, 2008. To that extent, the order entered July 21, 2009 shall be modified and the motion for reconsideration shall be granted only to that extent.

¶10.    James now appeals the chancellor's July 21, 2009, Order that granted, in part, Johnnie's motion to dismiss James's Petition for Modification; and he also appeals the February 2, 2010, Order denying his amended Motion to Reconsider and declaring that he could not offer evidence of events that occurred before December 3, 2008.

## DISCUSSION

¶11.    Generally, "[t]he chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous or applied an incorrect legal standard." *A.B. v. Y.Z.*, 60 So. 3d 737, 739 (Miss. 2011) (citing *Miller v. Pannell*, 815 So. 2d 1117, 1119 (Miss. 2002)).  However, this appeal involves a question of law, which this Court reviews de novo.  *Estate of Davis v. O'Neill*, 42 So. 3d 520, 524 (Miss. 2010) (citations omitted).  We restate the critical issue before us for the sake of today's discussion.

> **WHETHER, UNDER THE DOCTRINE OF *RES JUDICATA*, THE CHANCELLOR ABUSED HIS DISCRETION BY REFUSING TO PERMIT JAMES TO OFFER EVIDENCE OF HIS JOB LOSS TO SUPPORT HIS PETITION FOR MODIFICATION OF CHILD SUPPORT.**

¶12.    James identifies the four elements necessary to establish *res judicata*: identity of the subject matter of the action; identity of the cause of action; identity of the parties to the cause of action; and identity of the quality or character of a person against whom the claim is made. *Quinn v. Estate of Jones*, 818 So. 2d 1148, 1151 (Miss. 2002) (citing *Dunaway v. W. H. Hopper & Assoc., Inc.*, 422 So. 2d 749, 751 (Miss. 1982) (other citations omitted)).

5

¶13. He argues that the four necessary identities for *res judicata* are not met in this case. James points out that the chancellor entered the judgment modifying his child support obligations on December 3, 2008, *nunc pro tunc* to November 5, 2008, and that he lost his job on November 14, 2008, after the date upon which the Order had become operative between the parties. James cites **Green v. Myrick**, 177 Miss. 778, 171 So. 774, 774 (1937), for the proposition that courts "may by nunc pro tunc orders supply omissions in the record of what had previously been done, and by mistake or neglect, not entered." He also quotes Griffith's *Mississippi Chancery Practice*, 2000 edition: "When a judgment is entered nunc pro tunc, it becomes operative between the parties as of the date when it should have been entered." James contends that the Order became effective against him on November 5, 2008. Therefore, he argues that the issue of whether James's job loss constituted a material change in circumstances was not litigated, should not have been litigated, and thus could not be barred by the doctrine of *res judicata*.

¶14. James argues further that, while he could have filed a motion under Mississippi Rule of Civil Procedure 59, this filing was not necessary. He points out that the petition for modification originally was filed on April 1, 2009, and was filed again on May 29, 2009. He cites **Cannon v. Cannon**, 571 So. 2d 976, 978 (Miss. 1990), providing that, if a motion for relief from judgment is not designated as being brought under a particular rule, it cannot be considered under Rule 59 if it is filed more than ten days after the entry of judgment, but can be considered as having been brought under Rule 60(b).

¶15. Johnnie responds, quoting the adage that "[e]quity aids the vigilant and not those who slumber on their rights." *See* Bridges & Shelson, *Griffith's Mississippi Chancery Practice*

6

§ 41 (2000 ed.). Specifically, Johnnie argues that James made no effort to notify the court that James had lost his employment "either before the December 3, 2008 Order was entered or, pursuant to Rule 59 of the Mississippi Rules of Civil Procedure, after the entry of the Order."

¶16.    Accordingly, Johnnie contends that James's failure to raise his alleged material change in circumstances – his loss of employment – that occurred before December 3, 2008, now precludes him from asserting this "same event as a material change in circumstances justifying a modification of his child support obligation." In support of this argument, Johnnie cites *Leiden v. Leiden*, 902 So. 2d 582, 585 (Miss. Ct. App. 2004), for the well-known rule that, in Mississippi, modification of child support will occur only if there has been a material change in circumstances "since the entry of the decree [and] that such change was unforeseeable at the time of the decree . . . ." Johnnie adds that, obviously, James foresaw his termination of employment because it had occurred before the entry of the Order on December 3, 2008. Johnnie also responds to James's argument that James's Petition for Modification was proper under Mississippi Rule of Civil Procedure 60. First, Johnnie points out that James's pleadings failed to mention Rule 60, and, alternatively, given that James sat on his rights after entry of the December 3, 2008, Order, James did not file his pleadings within a "reasonable time" as required by Rule 60. *See* Miss. R. Civ. P. 60(b). Johnnie points out that James "did not attempt to bring this matter to the Chancellor's attention until 4 ½ months after the loss of his job and 4 months after entry of the child support Order." Accordingly, Johnnie posits that "[t]his is exactly the situation that is designed to be

7

prevented by Mississippi law related to child support orders and vesting of support payments as they become due and payable each month and the related doctrine of res judicata."

¶17.    This Court finds that *res judicata* should not bar James from presenting evidence of his job loss, which occurred after the effective date of the Order.[3] This Court has stated that "[n]unc pro tunc signifies now for then, or in other words, a thing is done now, which shall have *[the] same legal force and effect as if done at [the] time when it ought to have been done.*" **In re D.N.T.**, 843 So. 2d 690, 697 n.8 (Miss. 2003) (quoting *Black's Law Dictionary* 964 (5th ed. 1979)) (emphasis added). This Court has further articulated that

> [n]unc pro tunc means 'now for then' and when applied to the entry of a legal order or judgment it does not refer to a new or fresh (de novo) decision, as when a decision is made after the death of a party, *but relates to a ruling or action actually previously made or done but concerning which for some reason the record thereof is defective or omitted*. The later record making does not itself have a retroactive effect but it constitutes the later evidence of *a prior effectual act.*

**Thrash v. Thrash**, 385 So. 2d 961, 963-64 (Miss. 1980) (emphasis added).

¶18.    Because the December 3, 2008, Order clearly states that Chancellor Cobb entered it *nunc pro tunc* to November 5, 2008, this Court looks to November 5, 2008, for purposes of *res judicata*. *See* **Henderson v. Henderson**, 27 So. 3d 462, 464 (Miss. Ct. App. 2010) (two years after divorce decree erroneously had not been filed in chancery clerk's office,

---

[3]Chancellor Cobb entered the December 3, 2008, Order *nunc pro tunc* to November 5, 2008. James alleges in his brief that on November 5, 2008, Chancellor Cobb "issued an oral opinion modifying the decree of divorce and increas[ing] the amount of child support the petitioner was to pay to the sum of $1,050.00 per month. The Order was not entered until December 3, 2008." In her brief, Johnnie does not contest whether or not Chancellor Cobb issued an oral opinion from the bench on November 5, 2008. The transcript of the hearing before Chancellor Cobb is not in the record before us.

chancellor entered divorce decree *nunc pro tunc*, and effective, as to the date chancellor signed, not entered, the decree).

¶19. Notably, in recent years, the Court of Appeals has stated that "[r]es judicata precludes a party from litigating claims that were raised or *could have been raised* by the party's prior child support modification petition." **Howard v. Howard**, 968 So. 2d 961, 973 (Miss. Ct. App. 2007) (citing **Miss. Dep't of Human Servs v. Shelby**, 802 So. 2d 89, 95 (Miss. 2001)) (citations omitted) (emphasis added). Because the decree became legally effective as of November 5, 2008, due to the *nunc pro tunc* Order, James could not have brought this evidence to the chancellor's attention before the effective date of the Order, and this subject matter has never been before the chancellor. Accordingly, James's evidence of his job loss is not barred by *res judicata*. *See* **Dunaway**, 422 So. 2d at 751(citations omitted).

## CONCLUSION

¶20. The order upwardly modifying James's child-support payments was effective as of November 5, 2008, and James's job loss occurred after this legally effective date. Accordingly, the July 21, 2009, order granting in part Johnnie Evans Irving's motion to dismiss James Craig Irving's petition for modification; and the February 2, 2010, order denying James Craig Irving's amended motion to reconsider and declaring that James Craig Irving could not offer evidence of events occurring before December 3, 2008, are reversed, and these consolidated cases are remanded to the Chancery Court of DeSoto County for further proceedings consistent with this opinion.

¶21. **REVERSED AND REMANDED.**

9

**WALLER, C.J., DICKINSON, P.J., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING**.