# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00554-COA

**LAUREN PAIGE WOODARD MITCHELL**                    **APPELLANT**

**v.**

**ADAM STEPHENSON MITCHELL**                              **APPELLEE**

DATE OF JUDGMENT:            04/10/2014
TRIAL JUDGE:                 HON. C. MICHAEL MALSKI
COURT FROM WHICH APPEALED:   LEE COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:     AMANDA JANE PROCTOR
                             WILLIAM R. WRIGHT
ATTORNEYS FOR APPELLEE:      ROBERT D. JONES
                             ANTHONY RHETT WISE
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:     APPELLEE AWARDED CUSTODY OF
                             MINOR CHILD
DISPOSITION:                 AFFIRMED - 12/01/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., ISHEE, AND FAIR, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    Adam Mitchell and Paige Mitchell are the parents of a son, Mann.  After they separated, the issue of child custody was brought before the Lee County Chancery Court. Following a trial on the matter, the chancery court awarded physical custody of Mann to Adam and visitation to Paige.  Aggrieved, Paige appeals.  Finding no error, we affirm.

## FACTS

¶2.    Adam and Paige were married on January 10, 2009.  They lived in Tupelo, Mississippi, where Adam began working as the president of a newly acquired beer

distributorship for his father's company. Paige did not work outside of the home, and the plan was for the couple to live in Tupelo for several years before returning to Meridian, Mississippi, where Adam would work for his family's business. Mann was born on August 1, 2011, and the couple purchased a home in Meridian in January 2012. Prior to moving into the home, however, the couple separated.

¶3. On March 1, 2012, Paige filed a complaint for divorce and a motion for temporary relief against Adam. On March 8, 2012, Adam filed his answer and counter-complaint for divorce. Both parties requested custody of their son. On April 30, 2012, and again on May 10, 2012, temporary hearings were held regarding the custody of Mann. On May 30, 2012, the chancery court entered a temporary order in which the parties were granted temporary joint legal custody, and Paige was granted temporary physical custody. On November 7, 2012, an agreed order of modification of the temporary order was entered. The court entered an order on November 9, 2012, setting the matter for trial on several dates in January 2013 and March 2013.

¶4. On February 21, 2013, Adam filed a motion for leave to withdraw fault grounds for divorce. The trial was continued from March until May 6, 2013. However, on the morning of May 6, 2013, Paige moved the court to dismiss her grounds for divorce against Adam. On May 7, 2013, the court entered an order granting both parties' motions to withdraw fault grounds for divorce subject to certain terms and conditions related to the custody, visitation, and support of the minor child.

¶5. Adam filed his complaint for a determination of child custody on May 9, 2013, and

2

Paige filed a complaint for separate maintenance, child custody, and other relief the next day. The trial in this matter was held on September 16 through September 19, 2013, and October 3, 2013. Following numerous witnesses with lengthy testimonies, the chancery court entered a memorandum opinion and judgment two months later. In the opinion, Adam was awarded physical custody of Mann, with Paige being awarded visitation rights. Paige filed a motion to alter or amend the opinion and judgment on January 6, 2014. The next month, the chancery court entered an agreed supplemental judgment addressing the issues of child support and the custody-exchange location. On April 10, 2014, the chancery court entered an order overruling Paige's motion to alter or amend the opinion and judgment. Paige timely filed her appeal asserting the following issues: (1) whether the chancery court abused its discretion in limiting the testimony of two witnesses; (2) whether the chancery court erred in its *Albright*[1] analysis and resulting decision to award physical custody to Adam; (3) whether the chancery court erred in awarding Adam legal custody; and (4) whether the chancery court abused its discretion in its award of visitation.

## STANDARD OF REVIEW

¶6. This Court will only reverse a chancery court's decision "if it was manifestly wrong or clearly erroneous, or if the chancellor applied an erroneous legal standard." *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012) (citation omitted). While we will defer to a chancery court's findings of fact, questions of law are reviewed de novo. *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011) (citation omitted).

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

## DISCUSSION

> I. *Whether the chancery court abused its discretion in limiting the testimony of Lizzette Van Osteen and Kim Leathers.*

¶7. At trial, Paige attempted to call Lizzette Van Osteen to testify. Adam objected because Paige had failed to disclose her name on the witness list. The chancery court allowed Van Osteen to testify. However, her testimony was limited to that contained in a written statement she had prepared that had been produced prior to the trial. Similarly, Adam objected when Paige attempted to call Kim Leathers to testify for the same reason. Again, the chancery court allowed Leathers to testify, but limited her testimony to that which had not previously been covered by other witnesses.

¶8. Upon review of the transcript, we do not find that the chancery court abused its discretion. Paige does not dispute that she had failed to disclose the names of the witnesses, yet the chancery court still allowed them to testify. This issue is without merit.

> II. *Whether the chancery court erred in its* Albright *analysis and its decision to award physical custody to Adam.*

¶9. In all child-custody cases, the primary consideration is the best interest and welfare of the child. *Albright*, 437 So. 2d at 1005. When conducting an *Albright* analysis, the following factors are taken into consideration:

> (1) age, health, and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home

4

environment and employment of each parent[;] and [11] other factors relevant to the parent-child relationship.

*O'Briant v. O'Briant*, 99 So. 3d 802, 806 (¶17) (Miss. Ct. App. 2012).

¶10. "An *Albright* analysis is not a mathematical equation." *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014) (citing *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001)). When reviewing the chancery court's application of the *Albright* factors, the appellate court "review[s] the evidence and testimony presented at trial under each factor to ensure [the chancery court's] ruling was supported by record." *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001). "[T]his Court cannot reweigh the evidence and must defer to the [chancery court's] findings of the facts, so long as they are supported by substantial evidence." *Hall*, 134 So. 3d at 828 (¶21).

a. *Age, Health, and Sex of the Child*

¶11. Adam and Paige's son, Mann, was born on August 1, 2011. The testimony at trial revealed him to be a happy, healthy child. While he struggled with acid reflux as an infant, this issue has been resolved. Due to a history of ear infections, he underwent a procedure to have tubes placed in his ears. There was concern expressed that Paige possibly overmedicated Mann. However, by all accounts, he has very few health issues.

¶12. Paige argues that the chancery court erred in failing to utilize the presumption that she, as the mother, is Mann's best guardian. Mississippi law "has significantly weakened the once strong presumption that a mother is generally best suited to raise a young child." *Mayfield v. Mayfield*, 956 So. 2d 337, 342 (¶11) (Miss. Ct. App. 2007). As the chancery court aptly noted: "Mann has been cared for by several people including his parents,

5

grandparents, paid caregivers and pre-school staff. The fact that he is well-adjusted and happy indicates that he is old enough for people other than his mother to provide for his care." The chancellor, having seen and heard the evidence firsthand, was in the best position to determine which parent this factor favored. Mississippi law does not support Paige's argument that a child's mother, as opposed to the father, is the best caregiver by default. Accordingly, we find no manifest error in the chancellor's decision.

### b. Continuity of Care

¶13. Paige argues that "[t]he most understated fact in this case is that Paige cared for Mann more than Adam." Although it is true that Paige was a stay-at-home mother, the chancery court found that "[t]he parties' marriage seem[ed] to reflect the trend toward greater expectations of the father's involvement in routine care of [the] child." The chancery court found that witness testimony demonstrated that Paige "expected others to relieve her of the responsibility of caring for her child whenever possible." Paige hired a housekeeper/nanny who worked at the house five days per week; Paige did not cook or prepare meals; Adam took responsibility for Mann when he came home from work; and Paige relied heavily on friends, family, and babysitters to help with Mann.

¶14. After hearing the witness testimony, the chancery court did not find that this factor favored one parent over another, and we do not see any manifest error with this determination. The chancery court is in the best position "to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Carter v. Carter*, 735 So. 2d 1109, 1114

(¶19) (Miss. Ct. App. 1999).

¶15.    In the instant case, although Paige was a stay-at-home mother, the testimony indicates that many other people shared significantly in the everyday care of Mann – so much so that Paige did not shoulder the majority of Mann's caregiving duties.  We will not reverse a chancery court's findings if supported by substantial evidence in the record.  *Id*. at (¶18). Hence, we will not reverse the chancellor's findings here.

        c.        *Parenting Skills*

¶16.    While the chancery court did not find in favor of one party over the other with regard to Adam and Paige's parenting skills, the court did provide a lengthy analysis as to this factor.  The court voiced its concern regarding Paige's attempts to prevent Mann from visiting his father and paternal grandparents.  The court also disagreed with Paige requiring Mann to be picked up and dropped off by his father and grandparents in a public place. Finally, the chancery court cited instances of peculiar behavior demonstrated by Paige, including involving a friend to break into Adam's office in search of their prenuptial agreement and numerous actions showing patterns of manipulating Adam through her control of Mann.

¶17.    There was testimony supporting the fact that before the parties separated Adam played an active role in caring for Mann.  Adam has provided Mann's financial support, has exercised all visitation rights, and has developed a stable home for Mann in Meridian.  While the chancery court noted that both parents are capable of playing with Mann and involving him in activities to promote his academic and social growth, the court found that the

"[m]odeling of proper values and living lives of integrity are of much greater significance in the [c]ourt's opinion." We agree. Having reviewed the record, we do not find any of the chancellor's findings to be without substantial support. As such, we will not reverse the findings.

### d. Willingness and Capacity to Provide Child Care

¶18. At the time of the trial, Paige had recently moved from Tupelo to Minden, Louisiana, and her future employment was unclear. Adam, on the other hand, was working at his family's business in Meridian and had bought a home in the same neighborhood as his parents and other family members. When Adam has visitation, he has help from his parents and housekeeper, but he is able to be very involved in Mann's daily activities. Adam's work schedule allows him to stay home with Mann until it is time to take Mann to preschool each morning. Adam is then able to pick Mann up at noon and put him down for a nap during his lunch break on most days. After work, Adam is home to feed and care for Mann just as he did prior to the separation. It is clear that the record supports the chancery court's findings as to this factor.

### e. Physical and Mental Health and Age of the Parents

¶19. The chancery court was deeply concerned about Paige's physical and mental health. According to testimony, Paige was thirty-four at the time of the trial and did not lead a healthy lifestyle. She did not eat a healthy diet or exercise. Instead, there was testimony that she used diet pills, chewed Nicorette gum, and smoked occasionally. However, most concerning was Paige's mental health. She often gave conflicting testimony at trial. She

called two of her friends who testified at the trial "liars," and, most notably, she refused to accept any responsibility for any less-than-desirable situation in her life. Additionally, the record indicates that she took a large amount of prescription drugs. The chancery court cited insurance records that revealed Paige had filled eighty-six prescriptions for anti-depressants, anti-anxiety medications, and pain medications in the twenty-three months between Mann's birth and the time of the separation.

¶20. The chancery court noted that both Paige and Adam have tempers, and both testified they had used alcohol and marijuana. However, the court found that the use of illegal drugs was not a current issue. The court further took into account testimony that Adam attempts to control his temper by removing himself from a conflict.

¶21. With regards to Adam's mental and physical health, the court found that Adam led a healthy lifestyle. He had no apparent mental issues, was raised in a loving family, and has a clear understanding of his role in his family's business. Although the chancery court noted that "[s]ome actions of both parents show immaturity and poor judgment," the court further noted that Adam's "handling of the conflict between himself and Paige reflects maturity and a clear focus on his desire to do what is best for Mann."

> f.    *Emotional Ties of the Parent and Child*

¶22. Testimony described two-year-old Mann as an open, loving child, who is surrounded by parents and grandparents who love him. The chancery court found that this factor did not favor either parent, and we agree.

> g.    *Moral Fitness of the Parents*

9

¶23. Paige argues that the chancery court erred in its application of this factor by penalizing her for (1) spending two nights in a Memphis, Tennessee hotel room with a man she had recently met while she was still legally married to Adam; (2) using prescription drugs excessively; and (3) allegedly bearing false witness against Adam, his family, and her friends. The chancery court further found that Adam did not have any major moral issues. Although the court pointed out using marijuana is illegal, the court noted that the testimony regarding Adam's use of marijuana was not related to his current behavior.

¶24. We cannot find that the chancery court erred in taking Paige's actions into account when analyzing the parties' moral fitness. The acts were entered properly into evidence through testimony. Furthermore, these acts were reflective of Paige's moral fitness close to the time of the trial. As such, we agree that they were relevant to this analysis.

### h. Home, School, and Community Record of the Child

¶25. At the time of trial, Mann was only twenty-eight months old, and the chancery court found that he had not yet established a school and community record. Mann attended a Montessori preschool in both Tupelo and Meridian, and Paige testified that she had found a similar school for Mann to attend in Minden. Nonetheless, given Mann's young age, the chancery court found that this factor favored neither parent. Based upon the evidence in the record, we find no error in the chancery court's determination.

### i. Preference of the Child

¶26. The chancery court found, and both parties agree, that this factor is not relevant in this case due to Mann's age.

### j.     Stability of the Home Environment and Employment

¶27.    Paige argues that this factor should not favor either party. The chancery court noted that Mann's home since birth had been the house owned by Adam and Paige in Tupelo. However, Adam moved to Meridian, and Paige testified at trial that she planned on moving to Minden. The chancery court found that Paige's future plans appeared to be "ambiguous and somewhat unrealistic." When asked about her current and future employment status, Paige's answers were vague, and her statements as to where she planned to live were contradictory. In addition, despite the fact that Adam provided Paige with $3,000 per month, a car, car insurance, and health insurance for her and Mann, Paige did not pay the mortgage on their home in Tupelo and risked losing it in foreclosure until her parents stepped in and paid it. Her parents bought her a home in Minden that she planned to rent, but when asked, Paige was unsure of the address. She was also uncertain what her monthly salary was going to be and the amount of rent she was going to be expected to pay.

¶28.    Adam, on the other hand, works for his family's beer-distributing business in Meridian. He has worked for the business since 2007, and he has the ability to make his own work schedule taking into account Mann's needs. It is a solid company that has been in Adam's family for three generations. In addition, he purchased a home with a large fenced-in yard with a playroom. Again, we do not refute any of the chancery court's findings because they are substantially supported throughout the record.

¶29.    With regard to the *Albright* analysis, we find that the chancery court's findings on each factor were supported by substantial evidence, and that no error was made. This issue

11

is without merit.

> III. *Whether the chancery court erred in awarding Adam legal custody.*

¶30. Paige argues that the chancery court erred in awarding legal custody to Adam. The chancery court stated that it would like to award joint legal custody to Adam and Paige, but that it was disinclined to do so because they were unable to communicate. The court found that "[g]iven the fact that [Adam and Paige] are unable to communicate and have demonstrated antagonism and hostility and there have been physical confrontations, an award of joint custody is not possible." We agree. Therefore, the chancery court was left with the decision of determining custody.

¶31. This Court "may only reverse a child-custody determination if the chancellor is manifestly wrong, clearly erred, or applied an erroneous legal standard." *O'Briant*, 99 So. 3d at 805 (¶13) (citation omitted). "When a chancellor properly applies and considers the child-custody factors from *Albright*, there is no manifest error." *Id*. (citing *Smith v. Smith*, 614 So. 2d 394, 397 (Miss. 1993)). For all the reasons stated below, we find that the chancery court properly applied the *Albright* factors and that there was no manifest error. Accordingly, since joint legal custody was not an option, it is proper here for the chancellor to award Adam sole custody under *Albright*. This issue is also without merit.

> IV. *Whether the chancery court abused its discretion in its award of visitation.*

¶32. Finally, Paige argues that she is entitled to additional visitation. At trial, the chancery court granted Paige visitation on the second and fourth weekends of each month from Thursday at noon until Sunday at 5 p.m. until Mann begins kindergarten, when the visitation

12

will begin on Friday at 5 p.m. Paige was also awarded five weeks and six days of visitation in the summer. Paige further takes issue with the fact that the only holidays addressed in the chancery court's order were Christmas, Thanksgiving, Mother's Day, Father's Day, and spring break. The chancery court noted that Adam and Paige live 280 miles apart and that alternating holidays other than Christmas and Thanksgiving would not be practical. However, the chancery court did encourage Adam and Paige "to work together, considering their respective schedules and Mann's needs, to allow other reasonable visitation with Mann as can be mutually agreed upon by Paige and Adam."

¶33.    "Child visitation, and its limitations, are awarded at the chancellor's broad discretion." *Cassell v. Cassell*, 970 So. 2d 267, 271 (¶17) (Miss. Ct. App. 2007) (citing *Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994)). In determining visitation, the chancery court "must keep the best interest of the child as [the] paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and her child." *Faris v. Jernigan*, 939 So. 2d 835, 839 (¶8) (Miss. Ct. App. 2006) (citing *Harrington*, 648 So. 2d at 545).

¶34.    Upon review of the record, we see no error in the visitation schedule ordered by the chancery court. Given the distances involved between the two parents, we find that the schedule is in the best interest of the child. This issue is without merit.

¶35.    **THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  WILSON, J., NOT PARTICIPATING.**