# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01536-COA

**RENEE DIANE THACKER SELLERS**                                   **APPELLANT**

**v.**

**NICHOLAS RICHARD RINDERER**                                   **APPELLEE**

DATE OF JUDGMENT:             08/05/2016
TRIAL JUDGE:                  HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:    LAMAR COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       BRANDON L. BROOKS
ATTORNEY FOR APPELLEE:        PHILLIP LONDEREE
NATURE OF THE CASE:           CIVIL - CUSTODY
DISPOSITION:                  AFFIRMED: 06/05/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND GREENLEE, JJ.

### GRIFFIS, P.J., FOR THE COURT:

¶1.    Renee Diane Thacker Sellers appeals the Lamar County Chancery Court's *Albright*[1]
analysis and award of physical custody to Nicholas Richard Rinderer ("Nick"). We find no
error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Nick and Renee are the natural parents of Melanie, born in May 2013, and Paul, born
in March 2014.[2] Nick and Renee were never married. Both Melanie and Paul were born to
the parties while Renee was married to another man, Michael Sellers. Renee and Michael

---

[1] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

[2] For privacy purposes, we substitute fictitious names for the minor children.

were divorced November 24, 2014, and share a daughter, Sophia.

¶3.     This action commenced on August 12, 2013, when Nick filed a "complaint for adjudication of paternity, custody, support and other matters," along with a complaint for emergency custody. A temporary order was entered August 21, 2013, which adjudicated Nick the natural father of Melanie,[3] awarded joint legal custody to Nick and Renee, and temporary physical custody to Renee. Nick was awarded visitation two days per week. Additionally, the chancellor ordered Nick and Renee to meet with and be evaluated by Dr. John Pat Galloway. A guardian ad litem (GAL) was subsequently appointed by the chancellor.

¶4.     A review hearing was held on October 3, 2013, wherein it was noted that Renee was pregnant and Nick was "believed by the parties to be the father" of the child. Nick's visitation with Melanie was increased to include overnight visitation. Additionally, the chancellor ordered the parties to undergo a psychological evaluation. Thereafter, Nick and Renee were evaluated by Dr. Beverly Smallwood.

¶5.     During a hearing on August 25, 2014, the chancellor found that DNA testing confirmed Nick was Paul's natural father. The chancellor awarded Nick graduated visitation with Paul and ordered the parties to attend counseling.

¶6.     On February 18, 2015, the Lamar County Department of Human Services filed a complaint for support and other relief against Nick regarding child support for Melanie and Paul. On February 1, 2016, the chancellor ordered Nick to pay $193 per month in child

---

[3] Paul had not yet been born.

2

support and expanded Nick's visitation with the children to three full days per week, beginning 6:00 p.m. Tuesday to 6:00 p.m. Friday. Nick subsequently amended his "complaint for adjudication of paternity, custody, support and other matters" to include Paul.

¶7. Following a two-day trial, the chancellor entered an opinion and final judgment on August 5, 2016, wherein he adopted the findings, report, and recommendations of the GAL. "Based on the credible evidence and consideration of the [*Albright*] factors and findings," the chancellor awarded joint legal custody of Melanie and Paul to Nick and Renee, and physical custody to Nick, with Renee "having periods of visitation more than standard."

¶8. Renee moved for reconsideration, which the chancellor denied. Renee now appeals and argues the chancellor erred in his *Albright* analysis and decision to award physical custody to Nick.

## STANDARD OF REVIEW

¶9. A "chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous[,] or applied an incorrect legal standard." *Irving v. Irving*, 67 So. 3d 776, 778 (¶11) (Miss. 2011). However, questions of law are reviewed de novo. *Id*.

## ANALYSIS

¶10. In all child-custody cases, the primary consideration is the best interest and welfare of the child. *Albright*, 437 So. 2d at 1005. When conducting an *Albright* analysis, the following factors are to be considered:

> (1) age, health, and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best

parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.

*Mitchell v. Mitchell*, 180 So. 3d 810, 815 (¶9) (Miss. Ct. App. 2015). "When reviewing the [chancellor]'s application of the *Albright* factors, the appellate court reviews the evidence and testimony presented at trial under each factor to ensure the [chancellor]'s ruling was supported by [the] record." *Id.* at 816 (¶10) (internal quotation mark omitted).

¶11. Here, the record shows the chancellor addressed and considered each *Albright* factor. Renee claims the chancellor erroneously applied five of the *Albright* factors: age, health, and sex of the child; continuity of care; parenting skills and the willingness and capacity to provide primary child care; physical and mental health and age of the parents; and other factors relevant to the parent-child relationship. We address each of these factors separately.

### I.     Age, Health, and Sex of the Child

¶12. The chancellor noted the age, health, and sex of both children and found this factor to be neutral. Renee asserts "there is still a presumption that a mother is generally better suited to raise a young child" and argues that "[d]ue to the age of the children and the fact that [Melanie] is a baby girl, the chancellor should have found this factor in favor of [her] . . . ." However, as properly noted by the chancellor, "our supreme court has significantly weakened the once strong presumption that the mother is generally best suited to raise a young child. Now, our high court sees age and sex of the child as merely factors to be

4

considered under *Albright*." *Carter v. Escovedo*, 175 So. 3d 583, 586 (¶11) (Miss. Ct. App. 2015) (citation and internal quotation marks omitted). "Mississippi law does not support [Renee]'s argument that a child's mother, as opposed to the father, is the best caregiver by default." *Mitchell*, 180 So. 3d at 816 (¶12). Accordingly, we find no manifest error by the chancellor.

## II. Continuity of Care

¶13.    Renee asserts the chancellor found this factor to be neutral and argues, "[w]ithout question, this factor should have favored [her]." However, the record clearly shows that both the GAL and the chancellor found this factor favored Renee. Thus, as noted by Nick, "[t]his issue appears to have been raised in error."

## III. Parenting Skills and Willingness and Capacity to Provide Primary Child Care

¶14.    The GAL found this factor to be neutral. However, the chancellor ultimately concluded this factor favored Nick. We find the chancellor's findings are supported by the record.

¶15.    The chancellor noted that "both parties describe that they are the ones who provide for the child's needs in bathing, meals, dressing, etc., while the children are in their care." Renee argues this "go[es] against the testimony at trial," which showed that Nick's parents assisted in the child-care duties and shared those duties of primary caregiver with Nick. Renee claims that because she "had much more involvement in the children's care than [Nick]," this factor should favor her.

¶16.    However, the record shows Renee's parents also assisted in caring for the children.

Indeed, at the time of trial, Renee lived with her parents, who assisted in the child-care duties while Renee was at work. Thus, it appears multiple people including the children's parents and grandparents were involved in the children's care. Simply because Renee claims to have had "more involvement" is insufficient to reverse the chancellor's conclusions on this issue.

¶17. Renee further argues that Nick's failure to pay child support until ordered to do so should have been a negative reflection of his parenting skills. She cites no authority in support of her argument.

¶18. In *Hollon v. Hollon*, 784 So. 2d 943, 948 (¶16) (Miss. 2001), the chancellor found that "neither parties['] parenting skills, willingness[,] [or] capacity to take care of the child, [wa]s greater than the other." On appeal, the supreme court disagreed and found the mother held an advantage over the father. *Id*. at (¶18). The supreme court noted that the father "had not paid his child support *obligations* regularly, forcing [the mother] to garnish his wages." *Id*. at (¶16) (emphasis added).

¶19. Here, unlike in *Hollon*, there is no evidence that Nick failed to pay his child-support obligations. Instead, the record shows once the child-support payments were determined and ordered, Nick executed a withholding order to have those payments automatically withheld from his paycheck. Additionally, the record shows that prior to the court-ordered child support, Nick provided for the children while in his custody. Moreover, text messages between the parties indicate Nick requested copies "of what [Renee thought he] owe[d]." However, according to Nick, he never received the requested copies. Nick testified that he never received a copy of a bill for the children and declined to pay it. We find Renee's

6

argument regarding child support fails.

¶20. Importantly, while not mentioned or addressed by Renee, the record reflects that the chancellor was very concerned about photographs admitted into evidence that showed the children's condition while in Renee's care. The chancellor found that the photographs were "compelling as to the care given the children while with Renee when compared to that given by Nick" and stated "this factor impacts the parenting skills testimony offered by each parent and favors Nick."

¶21. The photographs, which were taken beginning in February 2014, show bruises, cuts, scrapes, scars, rashes, and bug bites on the children. The chancellor found that the photographs were "troubling . . . as to their continuance over an extended period of time while the children [were] with Renee."

¶22. At trial, the GAL, who had reviewed a copy of the photographs, also expressed concern "as to the vastness and the regularity and the consistency of the injuries and the rashes and the type of abrasions that do not seem of the norm for regular child's play." The GAL explained:

> [c]hildren that age can get scars, but, again, I think every — all of the injuries and issues that those pictures depict collectively are certainly of a concern. Whether it be an issue of a lack of supervision, I don't know; but, ultimately, it raises concerns as to how it's happening so regularly and so consistently.

¶23. When questioned about the photographs, Renee simply stated that "at least 50 percent of [the bruises, cuts, scrapes, rashes, etc.] occurred at Nick's house." However, she admitted that she had no support for her claim.

¶24. Overall, we determine that the chancellor's findings regarding this factor are

supported by substantial evidence in the record. Renee's claim that this factor should favor her is without merit.

    *IV. Physical and Mental Health and Age of the Parents*

¶25. The GAL found, and the chancellor agreed, that this factor favored Nick. Renee argues "the only evidence offered at trial that [she] suffered from any mental-health issues were the reports from Dr. Smallwood and Dr. Galloway, who[] also stated that [Nick] suffered from the same issues." Thus, it appears Renee claims this factor should have been neutral. We disagree and find the GAL and chancellor's concern over Renee's mental health is supported by the record.

¶26. Dr. Smallwood conducted a psychological evaluation on the parties and found that "Nick and Renee have the very same traits related to the potential personality disorders of histrionic, compulsive, and narcissistic." Additionally, Dr. Galloway noted that both parties had mental-health issues that may interfere with their taking care of a minor child. However, Dr. Galloway opined that "Renee presented many symptoms of having more severe mental[-] health issues but that her diagnoses was underdetermined at that time." Thus, while Dr. Smallwood found Nick and Renee "ha[d] the very same traits," Dr. Galloway determined Renee had more significant mental-health issues.

¶27. In her report, the GAL also expressed concern over Renee's mental health. Specifically, the GAL noted "Renee's admission to a suicide attempt and her extreme paranoid thoughts." These paranoid thoughts included Renee's belief that "she had been implanted with a device in her arm that evidenced a blue light when she lifted her arm over

8

a dish mat [that] Nick [had] purchased."

¶28. At trial, Nick discussed Renee's paranoid thoughts. He acknowledged Dr. Smallwood's opinion regarding "the same traits" but noted:

> I don't have a history of the things that [Renee] does; and even though a multiple[-]choice test might put us categorically in the same area, I don't have the same history that she does. I've never kept bladed scalpels around my kids. I've never torn up my car looking for cameras, I never thought that people were bugging my house, and I have never thought people were following me.

¶29. Additionally, the record shows Renee often gave conflicting testimony and made uncorroborated claims against Nick. Renee blamed Nick for her financial situation and advised the GAL that her financial issues, including her Chapter 7 bankruptcy, were Nick's fault because he was abusive. Moreover, Renee testified that every one of Nick's witnesses lied. However, when asked if she had any evidence to support that statement other than her own testimony, Renee responded, "Unfortunately, I don't . . . ."

¶30. Renee acknowledged at trial that aside from the counseling and evaluations ordered by the chancellor, she had not undergone any treatment for any mental-health issues. Instead, she claimed her paranoia and mental-health issues were no longer a problem since her separation from Nick.

¶31. The GAL testified at trial that "as of today" she had no concerns about the mental health of either party. However, she stated that, based on the trial testimony, she would not modify her *Albright* findings or her "ultimate conclusion of the *Albright* factors."

¶32. We find that although the GAL did not express any current concern, there is substantial evidence in the record to support the GAL and chancellor's overall concern for

9

Renee's mental health. Thus, there is no manifest error in the chancellor's findings on this factor.

###### V.    Other Factors Relevant to the Parent-Child Relationship

¶33.    The GAL found "Renee's current living conditions [were] not ideal for the two children" and noted that the two children "share a [bed]room with Renee, which includes another person when their half-sibling, Sophia, stays during Renee's visitation periods." The GAL concluded that the parties' living environments favored Nick. The chancellor agreed and recognized that although "a home need not be an expensive or lavish one to meet the needs of raising children," there are serious concerns about Renee's home environment "including cleanliness, space, furnishings, and supervision."[4]

¶34.    Renee claims she was "unfairly punished" and "improperly sanctioned . . . for the incorrect belief that she shared a bedroom with the children." Renee argues "this factor should have been held as neutral." We disagree.

¶35.    The chancellor's findings regarding this factor were based on more than a shared bedroom. While Renee addressed the chancellor's concern over the shared bedroom, she failed to address the chancellor's other concerns regarding cleanliness and supervision. Moreover, even though the children no longer share a bedroom with Renee, the record shows that Renee and the two children live in a three-bedroom, two-bath home with four other people (Renee's parents, her brother, and her daughter, Sophia). We find the chancellor's conclusions regarding Renee's living environment are relevant to the parent-child

---

[4] The chancellor's supervision concerns were related to the photographs discussed above.

relationship and supported by the record.

CONCLUSION

¶36.   "An *Albright* analysis is not a mathematical equation." *Mitchell*, 180 So. 3d at 816 (¶10).   The chancellor "is in the best position to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Id.* at (¶14) (internal quotation mark omitted).   We "cannot reweigh the evidence and must defer to the [chancellor]'s findings of facts, so long as they are supported by substantial evidence." *Id*. at (¶10).   "When a chancellor properly applies and considers [the *Albright* factors], there is no manifest error." *Id*. at 819 (¶31).

¶37.   We find the chancellor properly applied and considered the *Albright* factors.   The chancellor's award of physical custody to Nick is supported by substantial evidence in the record.   We therefore affirm.

¶38.   **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.   WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

11